# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 21, 2009      Decided January 22, 2010

No. 07-3140

UNITED STATES OF AMERICA,
APPELLEE

v.

ALLEN G. LOVE,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 07cr00027-01)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Tony W. Miles*, Assistant Federal Public Defender, entered an appearance.

*Courtney D. Spivey*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: GINSBURG and GRIFFITH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Allen G. Love pled guilty to transporting or shipping material involving child pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and 2256 (2006). On appeal, he challenges the district court's application of a sentencing enhancement, as well as some of the conditions of his supervised release. We affirm Love's sentence, save one condition of supervised release.

## I.

On October 19, 2006, two men using the screen names "James" and "Al" met in an incest chat room on the Internet. James mentioned he had a ten-year-old daughter, and Al asked to see a picture of her. James soon replied with a photograph of a young girl. "Al" was the defendant, Allen Love. "James" was undercover Metropolitan Police Detective Timothy Palchak, an investigator of Internet crimes against children.[1]

Love and Palchak chatted online many times over the next several months. Love wrote that he wanted to have sex with Palchak's daughter and asked for nude pictures of her. Love also suggested that Palchak bring his daughter to Chicago, where Love could have sex with her at a local hotel. In addition, Love sent Palchak four photographs and two video clips of prepubescent children engaging in sexually explicit conduct, including one clip in which a child is forcibly raped.

---

[1] Our recitation of the facts draws from the proffer signed by Love in support of his guilty plea and from the district court's findings with respect to two disputed paragraphs of the Presentence Investigation Report.

During an online chat on October 26, 2006, Palchak asked Love for pictures he could show his daughter. Love sent him a photograph of an adult male's genitals. On December 7, 2006, the men chatted again about Love's having sex with Palchak's daughter. Palchak said that he told his daughter Love wanted to have sex with her and that she was excited to meet him. Palchak said he was going to show her the child pornography Love had sent and asked for more. Love responded, "ok," and repeated that he wished Palchak and his daughter were in Chicago so that Love could have sex with her. Presentence Investigation Report (PSR) ¶ 21. In a chat on January 23, 2007, Palchak asked Love if he had any more pictures he could show his daughter or "just the same stuff" he had sent previously. Love replied, "[J]ust the same ones." *Id.* ¶ 22.

On January 25, 2007, agents from the Federal Bureau of Investigation executed a search warrant at Love's home. A search of his computers discovered over 600 images of child pornography. Love confessed to the FBI that he regularly traded child pornography with people he met online. Love was subsequently indicted for one count of transporting or shipping material involving child pornography and one count of possessing such material. Love pled guilty on September 4, 2007, to the distribution count in exchange for the government's dismissing the possession count and recommending a sentence at the low end of the guideline range.

Under section 2G2.2 of the Sentencing Guidelines, the base offense level for Love's conduct is 22. U.S. SENTENCING GUIDELINES MANUAL § 2G2.2(a) (2007) [hereinafter U.S.S.G.]. As part of the plea agreement, Love stipulated to several enhancements to his offense level: a two-level

increase because he possessed or transmitted illicit material involving a prepubescent minor, *id.* § 2G2.2(b)(2); a two-level increase because he distributed child pornography, *id.* § 2G2.2(b)(3)(F); a four-level increase because the material portrayed violent, sadistic, or masochistic conduct, *id.* § 2G2.2(b)(4); a two-level increase because he used a computer to facilitate his offense, *id.* § 2G2.2(b)(6); and a five-level increase because he possessed 600 or more illicit images, *id.* § 2G2.2(b)(7)(D). In return, the government agreed the offense level should be decreased by three levels under section 3E1.1 of the Guidelines for Love's acceptance of responsibility. According to the stipulations, Love's total offense level was 34.

Following Love's guilty plea, the United States Probation Office issued a Presentence Investigation Report (PSR) that agreed with those stipulations, with one exception. In lieu of section 2G2.2(b)(3)(F)'s two-level enhancement for any distribution of child pornography, the Probation Office applied section 2G2.2(b)(3)(E)'s seven-level enhancement for "[d]istribution [of child pornography] to a minor that was intended to persuade, induce, entice, or facilitate the travel of, the minor to engage in prohibited sexual conduct." PSR ¶ 31. This difference resulted in a total offense level of 39, *see id.* ¶ 41, five levels higher than that to which the parties had agreed.

A defendant's sentence may not exceed the statutory maximum regardless of the guideline range that results from his criminal history category and total offense level. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). Love's fairly clean criminal

record placed him in Criminal History Category I. *See* PSR ¶¶ 42–49. His total offense level was either 34 or 39, depending on whether section 2G2.2(b)(3)(E) applied. Given Love's criminal history category, a total offense level of 39 would translate to a sentencing range of 262 to 327 months' imprisonment, and a total offense level of 34 would mean a sentencing range of 151 to 188 months' imprisonment. *See* U.S.S.G. pt. 5A. But the statutory maximum for Love's offense is 240 months' imprisonment. *See* 18 U.S.C. § 2252A(b)(1).

At Love's sentencing hearing, the district court applied the seven-level enhancement recommended by the Probation Office, Tr. 24–25, but imposed a sentence of 188 months' imprisonment, followed by supervised release for life. Judgment in a Criminal Case at 2–3 [hereinafter Judgment]. Love's term of supervised release is subject to several standard and special conditions of supervision. Love timely appealed, and we have jurisdiction under 18 U.S.C. § 3742.[2]

---

[2] 18 U.S.C. § 3742(a)(2) authorizes appeals of sentences "imposed as a result of an incorrect application of the sentencing guidelines." In Love's case, the district court imposed a sentence (188 months) below the guideline sentence that results from applying the seven-level enhancement (240 months). One passage in *In re Sealed Case*, 449 F.3d 118 (D.C. Cir. 2006), arguably suggests we lack jurisdiction under § 3742(a)(2) when the district court grants such a downward departure. *See id.* at 121–22 & n.1 ("Subsection (2) does not allow jurisdiction here because Appellant's sentence was not the 'result of an incorrect *application* of the sentencing guidelines.' Rather, his sentence was the result of the District Court's decision to grant a *departure* from the Sentencing Guidelines . . . . The [departure] did not involve an application of the Guidelines. It involved a decision not to apply the Guidelines at all."). *In re Sealed Case*, however, held only that § 3742(a)(2) is inapplicable

Love argues the district court erred in three ways: (1) applying the seven-level enhancement from section 2G2.2(b)(3)(E); (2) entering a written judgment that conflicted with the orally pronounced sentence; and (3) imposing unreasonable conditions of supervised release.

## II.

We review sentences for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 46 (2007). In applying this standard, the court "ensure[s] that the district court committed no significant procedural error." *Id.* at 51. Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.*

Love argues the district court committed procedural error by applying section 2G2.2(b)(3)(E)'s seven-level enhancement. He alleges error with respect to each element of the enhancement: (1) distribution of child pornography; (2) to

---

when the defendant challenges the degree of a section 5K1.1 departure from the guideline range. *See id.* at 121–22 (citing *United States v. Hazel*, 928 F.2d 420, 423 (D.C. Cir. 1991)). Love's argument is different. Because Love challenges the district court's initial calculation of the guideline range, rather than the degree of its subsequent downward departure, we have jurisdiction under § 3742(a)(2). A sentence that results from a miscalculation of the guideline range is "imposed as a result of an incorrect application of the sentencing guidelines," 18 U.S.C. § 3742(a)(2), regardless of whether the district court also departed from the guideline range.

a minor; and (3) intended to persuade, induce, entice, or facilitate the travel of, the minor to engage in prohibited sexual conduct. We address each of his arguments in turn. We find none persuasive.

**A.**

Love argues the district court erroneously based the enhancement on his transmittal of one image of an adult male's genitals, rather than his admitted distribution of pictures and videos of child pornography. Appellant's Br. at 14; Reply Br. at 6–10. To address this argument, we must examine the entire sentencing transcript to understand why the district court applied the enhancement. *See United States v. Brockenborrugh*, 575 F.3d 726, 740–41 (D.C. Cir. 2009) (discussing the need to avoid "reading the district court's explanation [of a sentencing adjustment] in a parsed manner that overlooks its meaning in context"). If Love's understanding of the district court's decision were correct, we would reverse. The enhancement applies only to distribution of "material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.2 cmt.1. A photograph of an adult's genitals does not qualify. A careful reading of the entire sentencing transcript, however, shows that the district court relied on the exchange of adult pornography only for its value as circumstantial evidence that Love distributed child pornography to a minor with the requisite intent. We therefore find no error.

In his pre-hearing objections to the PSR, Love raised two objections to the seven-level enhancement. First, Love distributed child pornography to Palchak, not "to a minor." Second, Love did not intend to facilitate a sexual encounter with Palchak's daughter. At the sentencing hearing, the court

questioned defense counsel about these objections. In doing so, the court referred to all the material Love had sent Palchak:

> *All of that*, at least circumstantially, shows that . . . the defendant believed that it was being sent, albeit at the request of the officer, to the officer for the purpose of it being shown to the child . . . . I think it is reasonable to infer from *all of that*, that he sent it with the anticipation it would be shown to the child, so that it would factor into the child ultimately having sex with him.

Tr. 24–25 (emphases added).

Love argues the court's use of the word "it" shows the court was speaking of a single photograph. Appellant's Br. at 14; Reply Br. at 7–8. Though plausible, that is not the only permissible reading of the court's conclusion. "It" could just as easily refer to the child pornography Love sent or, more likely, all the pornography he sent, taken together.

Read in isolation the court's statement is at most ambiguous. Read in context, it shows the district court applied the enhancement because of Love's distribution of material that included child pornography. In response to defense counsel's argument that Love would not have distributed child pornography to a minor had Palchak not induced him, the court stated even more plainly its conclusion that Love distributed child pornography to Palchak's daughter with the intent to facilitate a sexual encounter with her:

> [T]he dissemination of material, not only showing young children in nude situations, but very suggestive situations, and also showing children actually being raped—I think it would be very difficult to show that when you send

photographs to someone with the intent of having those photographs shown to a child and you have already expressed your intent or desire to have sex with that child, I think it is very difficult to show that there wasn't a predisposition to engage in the act.

Tr. 18.

Nevertheless, Love contends the court based the enhancement on the chat in which he sent Palchak adult—but not child—pornography because the court repeatedly mentioned that chat. Appellant's Br. at 14; Reply Br. at 6–7. But Love's reading is too crabbed and fails to take into account that these comments were made in the context of Love's having already conceded that he distributed child pornography. The court easily found that Love distributed adult pornography to Palchak's daughter to facilitate prohibited sexual conduct. It then reasonably inferred that when Love sent Palchak child pornography, he did so for the same reason and expected Palchak's daughter to see it. Because the district court based its application of the enhancement on Love's distribution of child pornography, it committed no error.

## B.

Love next argues his distribution of child pornography was not "to a minor." Appellant's Br. at 14–15; Reply Br. at 10–12. He gives three reasons: (1) the evidence does not support a finding that Palchak's fictitious daughter was a "minor" as defined in the commentary to the guideline; (2) the evidence was insufficient to support a finding that Love had the requisite intent or knowledge that Palchak would show his daughter the child pornography; and (3) the enhancement is limited to "direct" distribution of child pornography to a

minor and therefore does not apply here. Because its findings were not clearly erroneous and its interpretation of the guideline was correct, the district court did not abuse its discretion. *See United States v. Sammoury*, 74 F.3d 1341, 1345 (D.C. Cir. 1996).

The commentary to section 2G2.2 defines "minor" to include "an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 18 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct." U.S.S.G. § 2G2.2 cmt.1. Love argues there was insufficient evidence to find that Palchak "represented" that his young daughter "could be provided for the purposes of engaging in sexually explicit conduct." The record contains ample evidence to support that finding. Palchak wrote that he told his daughter Love wanted to have sex with her and she was excited to meet him, PSR ¶ 21, from which one could reasonably infer that he was offering his daughter for sex. Moreover, Palchak made that statement during several months of chats in which Love made repeated entreaties to have sex with his daughter.

Love also argues the enhancement applies only if the government shows he *intended* for Palchak to display the child pornography to his daughter. But Love provides no authority that the government must prove specific intent. *Knowing* the child pornography he distributed would reach a minor is sufficient, *see* U.S.S.G. § 2G2.2 cmt.1 (defining "distribution to a minor" as "the *knowing* distribution to an individual who is a minor at the time of the offense" (emphasis added)), and the district court did not clearly err in concluding Love acted with such knowledge. During their chats, Palchak repeatedly asked for photographs or movies that he could show his daughter. On January 23, 2007,

Palchak again asked if there were pictures he could show the young girl, and Love responded: "[J]ust the same ones" he had already sent. PSR ¶ 22. By that time, Love had given Palchak numerous photographs and movie clips containing child pornography.

Finally, nothing in the Guidelines supports Love's argument that section 2G2.2(b)(3)(E) applies only to distribution of child pornography "directly" to a minor. Love suggests that, if the Sentencing Commission intended the enhancement to apply to distribution through an intermediary, it would have made the guideline explicit on that point. Appellant's Br. at 15. But the Commission could just as easily have limited the guideline in the manner Love suggests by inserting the word "directly" before "to a minor." We will not, without good reason, read into the guideline a requirement not included in its text. *Cf. Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply . . . ."). Rather, we understand section 2G2.2(b)(3)(E) to apply when, acting with the requisite purpose, the defendant engages in an act related to the transfer of child pornography with the knowledge it will be received or viewed by a minor.

## C.

Love also asserts, as he did below, that the record does not support a finding that his distribution of child pornography was "intended to persuade, induce, entice, coerce, or facilitate the travel of" Palchak's daughter to engage in prohibited sexual conduct. We review the district court's factual finding about Love's intent for clear error. *See United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995).

The district court did not clearly err in concluding Love intended his distribution of child pornography to "factor into the child ultimately having sex with him." Tr. 25. During their first conversation, Love asked Palchak for a picture of his daughter. After Palchak sent a photograph of a young girl, Love said he wanted to have sex with her and asked Palchak to bring her to Chicago for that purpose. When Palchak told Love he was going to show his daughter the videos he had sent, Love replied, "ok," and that he wished Palchak and his daughter were in Chicago so Love could have sex with her. PSR ¶ 21. The district court inferred from these exchanges that Love's purpose in conversing with Palchak and sending him child pornography was to facilitate a sexual encounter with Palchak's ten-year-old daughter. This was not clearly erroneous.

We therefore affirm the district court's application of section 2G2.2(b)(3)(E)'s seven-level enhancement.

## III.

Next, Love challenges seven conditions of his supervised release, some on the ground that they differ from the sentence announced from the bench and all on the ground that they are unreasonable.

## A.

Because "[t]he pronouncement of the sentence constitutes the judgment of the court," *Kennedy v. Reid*, 249 F.2d 492, 495 (D.C. Cir. 1957), "the written judgment form is a nullity to the extent it conflicts with the previously pronounced sentence," *United States v. Booker*, 436 F.3d 238, 245 (D.C. Cir. 2006). This rule rests on two foundational principles: (1) the defendant has a right to be present at sentencing,

*Borum v. United States*, 409 F.2d 433, 440 n.28 (D.C. Cir. 1967), and (2) "when a final judgment has once been entered, no second or different judgment may be rendered . . . until the first shall be vacated and set aside or reversed on appeal or error." *Booker*, 436 F.3d at 245 (quoting 49 C.J.S. JUDGMENTS § 76, at 150–51 (2005)). When the two are in conflict, we will order the judgment corrected to conform to the sentence imposed from the bench, *see, e.g.*, *United States v. Lewis*, 626 F.2d 940, 953 (D.C. Cir. 1980), but we will not remand when the judgment is consistent with the sentence, *see Borum*, 409 F.2d at 440.

This circuit has not squarely addressed whether the district court may use the written judgment to clarify an ambiguous oral pronouncement of the sentence. Today we join the vast majority of our sister circuits in holding that it may. *See United States v. Penson*, 526 F.3d 331, 334–35 (6th Cir. 2008); *United States v. Napier*, 463 F.3d 1040, 1043–44 (9th Cir. 2006); *United States v. Vega-Ortiz*, 425 F.3d 20, 23 (1st Cir. 2005); *United States v. Osborne*, 345 F.3d 281, 283 n.1 (4th Cir. 2003); *Ruggiano v. Reish*, 307 F.3d 121, 133–35 (3d Cir. 2002); *United States v. Thomas*, 299 F.3d 150, 152–53 (2d Cir. 2002); *United States v. Warden*, 291 F.3d 363, 365 (5th Cir. 2002); *United States v. Bull*, 214 F.3d 1275, 1279 (11th Cir. 2000); *United States v. Bonanno*, 146 F.3d 502, 511–12 (7th Cir. 1998); *United States v. Villano*, 816 F.2d 1448, 1451 (10th Cir. 1987) (en banc) ("This is the purpose of the written order: to help clarify an ambiguous oral sentence by providing evidence of what was said from the bench."). *But cf. Holloway v. United States*, 960 F.2d 1348, 1358 (8th Cir. 1992) ("[A]mbiguities in the sentence pronouncement are to be construed in favor of the defendant."). Therefore, we will not remand for the district court to correct a written

judgment that clarifies—rather than contradicts—the oral pronouncement of the sentence.

Love contends that the descriptions of several special conditions of supervised release in the written judgment impermissibly conflict with the conditions imposed orally at sentencing. Most of the alleged discrepancies simply clarify or define terms included in the oral pronouncement. Not every difference Love finds between the sentence and judgment warrants discussion, but some do, and with respect to one condition he is correct.

First, Love argues that the judgment's description of the condition regarding mental health treatment impermissibly differs from the sentence. At the sentencing hearing, the district court required that, while in prison, Love receive "any mental-health treatment that needs to be provided." Tr. 63. The court further required that when Love is "on supervised release, if it's felt further treatment is needed, either in the sex-offender area or in the mental-health area, [Love] also participate in that." Tr. 64. The written judgment provides:

> The defendant shall participate in a mental health program specifically related to sexual offender therapy, as approved by the Probation Office. The defendant shall abide by all program rules, requirements and conditions, which may include, but [are] not limited to, submission to periodic and random polygraph testing, plethysmograph examinations, and ABEL Assessment, as directed by the Probation Office.

Judgment at 4.

Love maintains the oral pronouncement of the sentence made treatment conditional, rather than mandatory, by requiring mental health or sex offender treatment only "if it's felt further treatment is needed." Tr. 64. Love also challenges the reasonableness of the oral pronouncement as impermissibly vague because it fails to identify who will decide if treatment is necessary and when such a determination will be made. Appellant's Br. at 20–21; Reply Br. at 15.

Oral pronouncements of supervised release conditions are often worded imprecisely. *Cf. United States v. Daugherty*, 269 U.S. 360, 363 (1926) ("Sentences in criminal cases should reveal with fair certainty the intent of the court . . . . [But] elimination of every possible doubt cannot be demanded."). With that in mind, we do not think the district court intended to make Love's mental health treatment conditional on a subsequent determination of its necessity. Once again, we look to the context of the district court's statements. *See Brockenborrugh*, 575 F.3d at 740–41. The district court had before it the Sentencing Guidelines, which recommend mandatory mental health treatment, *see* U.S.S.G. § 5D1.3(d)(7), and the government's sentencing memorandum, which recommended the same. Love lodged no objection to the court's reliance upon either. Tr. 47, 66. As such, we think the court intended the condition to be mandatory, regardless of the phrasing used at sentencing. The written judgment is consistent with that understanding. Our conclusion moots Love's concerns about the condition's vagueness. Because the district court made treatment mandatory, there is no need to ask who decides whether treatment is necessary and when that decision is to be made.

Second, Love contends the written judgment is more restrictive than the oral sentence because it limits his ability, absent permission, to reside or volunteer with minors. We find no error because both restrictions are encompassed in a third one: The oral pronouncement barring all contact with children. Tr. 64. Moreover, to the extent the oral pronouncement and written judgment differ, the judgment is more lenient because it permits Love to reside or volunteer with children as long as he receives permission. The oral pronouncement could be read to prohibit even that.[3]

Finally, Love argues the district court impermissibly expanded a condition restricting possession of pornography by adding in the written judgment that he "shall not patronize any place where pornography or erotica can be accessed, obtained, or viewed, including establishments where sexual entertainment is available." Judgment at 4. The government suggests this prohibition may be "reasonably viewed as a clarification" of the restriction on Love's possession of pornographic materials. Appellee's Br. at 39 n.17. The oral pronouncement, however, unambiguously limits the restriction to *possession* of pornography. The written judgment is not so limited. It prohibits visiting certain establishments—including, presumably, many bookstores and newsstands—regardless of whether Love possesses pornography while he is there. This cannot be understood as a mere clarification of the pornography restriction pronounced orally. We therefore remand to the district court for the sole purpose of deleting from the written judgment the provision that "[h]e shall not patronize any place where pornography or erotica can be accessed, obtained, or viewed, including

---

[3] The government does not challenge the judgment as insufficiently restrictive.

establishments where sexual entertainment is available." *See, e.g.*, *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1356 (D.C. Cir. 2002) (remanding for the district court to strike from the judgment a special condition of supervised release).

**B.**

Love also challenges seven of the special conditions of his supervised release as unreasonable or inconsistent with the Guidelines. At sentencing, he specifically objected only to the conditions related to Internet usage, associations with known sex offenders, and contact with children through employment. Tr. 47–52. We review the imposition of these conditions for abuse of discretion. *See United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006). The statutory factors guiding the district court's exercise of its discretion are outlined in *United States v. Stanfield*, 360 F.3d 1346 (D.C. Cir. 2004):

> [T]he court may order any condition of supervised release "it considers to be appropriate," to the extent the condition is "reasonably related" to the nature and circumstances of the offense and the history and characteristics of the defendant, and to the need to deter crime, to protect the public from further crimes of the defendant, and to provide needed training, medical care, or other correctional treatment to the defendant. 18 U.S.C. § 3583(d)(1). The condition also must entail "no greater deprivation of liberty than is reasonably necessary" to provide adequate deterrence, to protect the public, and to meet the defendant's vocational and medical needs. *Id.* § 3583(d)(2).

360 F.3d at 1352–53. Love's general objection to the other conditions, *see* Tr. 66 (objecting "to any condition of

supervised release beyond that which I indicated in my proffer"), was insufficient to preserve his arguments for appeal. *See United States v. Breedlove*, 204 F.3d 267, 270 (D.C. Cir. 2000) ("An objection is not properly raised if it is couched in terms too general to have alerted the trial court to the substance of the petitioner's point."). We therefore review those conditions for plain error, *see* FED. R. CRIM. P. 52(b), and find none.

## 1. Restriction on Internet Access

Love challenges a condition that will require him to obtain prior written approval from the Probation Office for Internet access. The condition states, "The defendant shall not possess or use a computer that has access to any 'on-line computer service' at any location, including his place of employment, without the prior written approval of the Probation Office." Judgment at 4. The condition is overbroad, Love argues, in light of the near ubiquity of the Internet in everyday life. He suggests a more tailored condition that would ban only electronic communication involving prohibited sexual material, or, alternatively, would require that his Internet use be monitored remotely by the Probation Office. Appellant's Br. at 22–25.

The Internet prohibition will, no doubt, substantially affect Love's day-to-day activities. It will deprive him of the easiest way to pay his bills, check the weather, stay on top of world events, and keep in touch with friends. It will also prevent him from using the Internet to trade child pornography. These are all factors district courts should weigh in considering restrictions on Internet access as conditions of supervised release. Given the alternatives of remote monitoring of an individual's Internet usage and

unannounced examinations of his computers, an Internet ban subject to Probation Office approval may in some cases impose a "greater deprivation of liberty than is reasonably necessary" to deter illegal conduct and protect the public. 18 U.S.C. § 3583(d)(2); *see, e.g.*, *United States v. Perazza-Mercado*, 553 F.3d 65, 69–74 (1st Cir. 2009); *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005); *United States v. Holm*, 326 F.3d 872, 877–79 (7th Cir. 2003); *United States v. Sofsky*, 287 F.3d 122, 126–27 (2d Cir. 2002); *United States v. White*, 244 F.3d 1199, 1205–07 (10th Cir. 2001). But not here. In Love's case, this restriction is eminently reasonable.

On this record, the condition is properly tailored to the circumstances of the offense and Love's background, and it is reasonably necessary to deter future misconduct and to protect children. Consensus is emerging among our sister circuits that Internet bans, while perhaps unreasonably broad for defendants who possess or distribute child pornography, may be appropriate for those who use the Internet to "initiate or facilitate the victimization of children." *Holm*, 326 F.3d at 878; *see United States v. Thielemann*, 575 F.3d 265, 278 (3d Cir. 2009); *United States v. Johnson*, 446 F.3d 272, 283 (2d Cir. 2006); *United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007); *United States v. Paul*, 274 F.3d 155, 169 (5th Cir. 2001). The distinction is grounded in the simple proposition that when a defendant has used the Internet to solicit sex with minors, "the hazard presented by recidivism" is greater than when the defendant has traded child pornography. *Johnson*, 446 F.3d at 283.

The district court found that Love not only distributed child pornography but that he also solicited sex with Palchak's fictitious daughter. The court concluded that Love would have had sex with her if given the opportunity, Tr. 18,

59, 60, and he would likely repeat this conduct upon release if he thought he would not be caught, Tr. 62. In sum, the hazard presented by Love's potential recidivism is substantial, and his inclination towards reoffending is great. Making Love's Internet use subject to Probation Office approval is therefore appropriately tailored to the harm that may result should he resume his previous course of conduct after release from prison.

Moreover, the continuing development of the Internet makes it reasonable for the district court to give the Probation Office broad authority to determine the scope of Love's permissible Internet use. Love's term of supervised release will not begin any time soon. Sentencing courts can predict neither the new ways in which child pornography will then be available nor the new technologies the government may use to police its availability. An Internet restriction that today imposes "no greater deprivation of liberty than is reasonably necessary" to deter illegal conduct may, by the time Love is released, be either wholly inadequate or entirely too burdensome. A broad Internet prohibition, which the Probation Office will tailor to the technology in use at the time of Love's release, is an appropriate way to deal with that uncertainty. We assume the Probation Office will reasonably exercise its discretion by permitting Love to use the Internet when, and to the extent, the prohibition no longer serves the purposes of his supervised release. The Internet restriction therefore imposes no greater deprivation of liberty than is reasonably necessary to serve the purposes of supervised release.

### 2. Restriction on Contact with Known Sex Offenders

The district court required that Love "not associate with known sex offenders or groups of individuals engaged in such activity." Tr. 64. Love argues compliance with this condition would be unduly burdensome because it could preclude his residence with other sex offenders in shared housing and prevent his rehabilitation through group therapy with other sex offenders. He also argues the condition is overbroad because distribution of child pornography is not ordinarily committed in groups.

In addition to the contact-with-sex-offenders condition, Love's supervised release is subject to the standard condition prohibiting him from associating "with any persons engaged in criminal activity" or "with any person convicted of a felony, unless granted permission to do so by the probation officer." Judgment at 3. The Guidelines recommend this condition be attached to any term of supervised release, *see* U.S.S.G. § 5D1.3(c)(9), and Love does not challenge its imposition here. The special condition prohibiting contact with known sex offenders is merely one particular application of the standard condition. The only difference between the two is that the sex-offender condition contains no explicit exception for contact with the permission of the Probation Office. We do not agree with Love, however, that the absence of such an exception will require the Probation Office to enforce the condition at the expense of other post-incarceration objectives like supervision and treatment. There is no conflict in principle between these conditions. Should the Probation Office find the conditions to be inconsistent in practice, it may reasonably reconcile them through non-enforcement of the contact-with-sex-offenders condition.

Moreover, we find entirely meritless Love's contention that the condition is overbroad because distribution of child pornography is not usually a group offense. Distribution is inherently interpersonal. Preventing Love from interacting with others who share his predilections is reasonably related to the specific-deterrence objectives of supervised release.

### 3. Restriction on Employment

Love also challenges as inconsistent with section 5F1.5 of the Sentencing Guidelines the requirement that he obtain approval for employment involving contact with minors.[4] That condition is impermissible, Love argues, because there was no "reasonably direct relationship" between his "occupation, business, or profession and the conduct relevant to the offense of conviction." U.S.S.G. § 5F1.5(a)(1).

Because, as we discuss below, we uphold a broader condition that prohibits Love from having any contact with minors, we need not decide whether the lesser included condition banning employment involving contact with minors is inconsistent with the Guidelines. Nothing we might say about this narrower condition would relieve Love of his obligation to avoid such employment.

### 4. Remaining Restrictions

We review for plain error the conditions relating to Love's possession of pornographic materials, possession of

---

[4] As reflected in the written judgment, the condition provides: "The defendant shall not be employed in any capacity or participate in any volunteer activity that involves contact with minors under the age of 18, except under circumstances approved in advance and in writing by the Court." Judgment at 4.

camera or video recording equipment, contact with children, and post-incarceration mental health treatment.

The first three of these conditions are nearly identical to those upheld under plain error review in *United States v. Sullivan*, 451 F.3d 884 (D.C. Cir. 2006).[5] We found Sullivan's challenges "meritless" because the conditions were not "even arguably inconsistent" with any D.C. Circuit authority. 451 F.3d at 896. Love cites no case decided in the three years since *Sullivan* that makes any error by the district court more plain than it would have been then. Although Love will be on supervised release from the time he leaves prison until the time he dies, whereas Sullivan served only a two-year term of supervised release, *compare Sullivan*, 451 F.3d at 887, *with* Judgment at 2–3, we do not think this difference

---

[5] The conditions read:

> The defendant shall have no direct, or indirect, contact with children under the age of 18, and shall refrain from loitering in any place where children congregate, including but not limited to residences, arcades, parks, playgrounds, and schools. He shall not reside with a child or children under the age of 18 without the expressed and written approval of the minor's legal guardian and the written permission of the Court. . . .

> The defendant shall not possess any pornographic, sexually oriented, or sexually stimulating materials, including visual, auditory, telephonic, or electronic media, and/or computer programs or services that are relevant to the offender's deviant behavior pattern. . . .

> The defendant shall not own or possess any type of camera or video recording device without the approval of the Probation Office.

Judgment at 4.

makes any error committed by the district court an obvious one.

The only remaining condition at issue is the requirement that Love obtain mental health treatment. As discussed above, our holding that the condition is mandatory resolves Love's substantive concerns.

## IV.

We remand the case to the district court with instructions to conform the condition in the written judgment relating to possession of sexual materials to the corresponding condition imposed orally at the sentencing hearing. Otherwise, we affirm.

*So ordered.*