KAREN LeCRAFT HENDERSON, Circuit Judge,
concurring:
Although I agree with my colleagues’ decisions to affirm the duration of Russell’s supervised release and to remand the computer ban for refinement, I write separately to distance myself on various points. First, I do not share the majority’s doubt regarding “the precedential effect,” Maj. Op. at 634, of United States v. Sullivan, 451 F.3d 884 (D.C.Cir.2006), and United States v. Love, 593 F.3d 1 (D.C.Cir.2010). In Sullivan, the “Appellant urge[d] us to review the substantive validity of the [unobjected-to] terms of supervised release for abuse of discretion” but “[w]e rejected] this argument,” holding that “[t]he proper standard of review [t]here [was] plain error.” 451 F.3d at 894. Likewise, Love applied plain error review to four unobjected-to conditions of supervised release, twice explaining its application of that standard. 593 F.3d at 11, 14. It first relied on United States v. Breedlove, 204 F.3d 267 (D.C.Cir.2000), and Fed. R.Crim.P. 52(b) in support thereof and later cited Sullivan to the same effect. Id. I do not know what else is needed to decide the scope-of-review question. Nor should United States v. Bras, 483 F.3d 103 (D.C.Cir.2007), eclipse the precedential effect of Sullivan and Love. Williams Concurrence at 641. Bras did not address Sullivan, perhaps because Bras dealt with a term of imprisonment rather than conditions of supervised release. 483 F.3d at 104. And Bras preceded Love. Thus, while Sullivan and Love are distinguishable because “they do not address the applicable standard with respect to the duration of supervised release,” Maj. Op. at 634 (emphasis added), they nevertheless remain good law regarding unobjected-to conditions of supervised release. And on the latter point, Sullivan and Love are of course distinguishable because Russell did *640 challenge the disputed condition of supervised release at sentencing.[1]
Second, I do not share my concurring colleague’s faith in the isolated Justice Department data he cites. Williams Concurrence at 641-42. Those figures do not sway me. Assuming their accuracy, lower recidivism rates for sex offenders can just as easily be explained by the tight leash judges often specify for sex offenders once released from incarceration, as my colleague himself recognizes. Id. at 641-42.[2]
And finally, I am unwilling to subscribe to the notion that a restriction (or ban) on a criminal defendant’s computer use, at least where the computer enables the crime, constitutes “a substantial burden” on liberty, Maj. Op. at 638. A defendant convicted of vehicular homicide can permanently lose his driving privilege and the resulting ban on his use of an automobile — which, like Russell’s computer, enabled the crime — does not deprive him of his liberty. That Russell’s white collar career may be adversely affected by the computer ban — a result the majority supports with anecdotal predictions, Maj. Op. at 637-38 — does not ipso facto translate into a deprivation of liberty. We can judicially note that millions of Americans every day perform jobs without using (or even seeing) a computer. If Russell cannot find a job, it is more likely because of his criminal record than the computer ban. While I do not believe the thirty-year computer ban implicates Russell’s liberty, I nevertheless recognize that the weight of authority is to the contrary. For that reason, I join in the remand for the district court to again exercise its discretion in refining[3] the computer ban condition of Russell’s supervised release.

. Regarding that condition, whether a "tension” results, Maj. Op. at 636, when, notwithstanding the government's concession, we proceed with our review is irrelevant — as the Supreme Court reminded us long ago, our duty of review is independent and mandatory, Young v. United States, 315 U.S. 257, 258-59, 62 S.Ct. 510, 86 L.Ed. 832 (1942); see also United States v. Escobar Noble, 653 F.2d 34, 36 (1st Cir.1981) ("It is the particular function of the court, not the prosecutor, to say the last word about the justice of a sentence.”).

. In Love, for example, we recognized a nation-wide move towards broad restrictions on child predators:
Consensus is emerging among our sister circuits that Internet bans, while perhaps unreasonably broad for defendants who possess or distribute child pornography, may be appropriate for those who use the Internet to "initiate or facilitate the victimization of children.” [United States v.] Holm, 326 F.3d [872, 878 (7th Cir.2003)]; see United States v. Thielemann, 575 F.3d 265, 278 (3d Cir.2009); United States v. Johnson, 446 F.3d 272, 283 (2d Cir.2006); United States v. Boston, 494 F.3d 660, 668 (8th Cir.2007); United States v. Paul, 274 F.3d 155, 169 (5th Cir.2001). The distinction is grounded in the simple proposition that when a defendant has used the Internet to solicit sex with minors, "the hazard presented by recidivism” is greater than when the defendant has traded child pornography. Johnson, 446 F.3d at 283.
593 F.3d at 12.

.I note that, in the event the district court permits circumscribed computer use, 18 U.S.C. § 3583(d) expressly provides:
The court may order, as an explicit condition of supervised release ... that [Russell] submit his ... computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion ... and by any probation officer in the lawful discharge of the officer’s supervision functions.