KAVANAUGH, Circuit Judge,
dissenting:
Malenya, then a 41-year-old man, attempted to have sex with someone he knew to be 14. Malenya’s attempt was thwarted only because the 14-year-old’s mother fortuitously intercepted explicit text messages Malenya sent to the 14-year-old. For his conduct, Malenya ultimately pled guilty and received a relatively short prison sentence of one year and a day in prison, followed by three years of supervised release with certain special conditions attached. On appeal, Malenya objects to the special conditions imposed by the District Court and asks that they be vacated. The majority opinion vacates the special conditions. With one exception, I would affirm the special conditions. I therefore respectfully dissent.
I
Under Section 3583 of Title 18, a district court at sentencing may impose a term of supervised release to follow a term of imprisonment. By statute, a term of supervised release comes with certain conditions attached; some are mandatory and some are discretionary. If the defendant violates a condition, the defendant’s term of supervised release may be revoked and the defendant sent back to prison.
The mandatory conditions of supervised release include, for example, a requirement that the defendant not commit another crime or unlawfully possess a controlled substance during the term of supervised release. See 18 U.S.C. § 3583(d).
By statute, the court also has discretion to impose additional supervised release conditions, which are commonly referred to as “special conditions,” provided that three statutory requirements are met. First, special conditions must be “reasonably related” to some of the general sentencing factors identified in Section 3553(a), including “the nature and circumstances of the offense,” “the history and characteristics of the defendant,” deterrence, protection of the public, and providing needed correctional treatment to the defendant. Id. § 3583(d)(1) (citing id. § 3553(a)(l)-(2)). Second, special conditions must entail “no greater deprivation of liberty than is reasonably necessary” for certain purposes set forth in Section 3553(a), including deterrence, protection of the public, and providing treatment to the defendant. Id. § 3583(d)(2) (citing id. § 3553(a)(2)). And third, special conditions must be “consistent with any pertinent policy statements issued by the Sentencing Commission.” Id. § 3583(d)(3). The first two requirements — the “reasonably related” and “reasonably necessary” requirements — are the focus of this appeal.
Section 3583’s “reasonably related” and “reasonably necessary” standards are obviously quite vague. The vague statutory text means that district courts possess significant discretion to balance the competing sentencing considerations listed in Section 3553(a) (and cross-referenced by Section 3583) when imposing special conditions of supervised release. The significant discretion in turn means that we can expect variety. Different “district courts may have distinct sentencing philosophies.” United States v. Gardellini, 545 F.3d 1089, 1093 (D.C.Cir.2008). And even *563 apart from such philosophical differences, the special conditions that appear “reasonably related” and “reasonably necessary” to one district court judge in a particular case may appear unduly restrictive to another district court judge.
On appeal, we review the district court’s selection of special conditions of supervised release only for an abuse of discretion. See United States v. Love, 593 F.3d 1, 11 (D.C.Cir.2010). Appellate deference is thus stacked upon wide district court discretion. As appellate judges, it is not our role to impose the mix of special conditions we would have selected as district court judges in the first instance. Rather, our more modest task is simply to ensure that the district court has not jumped the rails bounding its wide discretion.
II
In this case, in considering whether the District Court abused its discretion in finding the special conditions “reasonably related” to Section 3553(a)’s sentencing goals and not more restrictive than “reasonably necessary,” I begin with four overarching considerations that inform my evaluation of the specific special conditions.[1]
First, any analysis of the special conditions must begin with the one critical fact in this case. Malenya, then a 41-year-old man, targeted and attempted to have sex with someone he knew to be 14 years old. This is a contact case. In other words, Malenya was doing far more than watching pornography. In what- seems to be an overly generous interpretation, the majority opinion terms the evidence “ambiguous” as to whether Malenya was attracted to children per se. Maj. Op. at 12. But we know that Malenya (then 41 years old) actively sought to have sex with someone he knew to be-14 years old. That is not ambiguous. In light of Malenya’s admitted effort to sexually prey on a 14-year-old, it was entirely rational for the District Court to impose various special conditions of supervised release in order to try to prevent Malenya from sexually exploiting future under-age victims.
Second, the special conditions imposed on Malenya are common for sex offenders, particularly for those such as Malenya who have engaged in or sought to engage in actual sexual activities with individuals they knew to be under age. See generally U.S. SENTENCING COMMISSION, FEDERAL ÜF- *564 fenders Sentenced to Supervised Release 20-27 (2010). That these kinds of special conditions are commonly imposed by district court judges helps demonstrate the reasonableness of the special conditions, in the same way that a sentence’s being within the Sentencing Guidelines helps demonstrate the reasonableness of the sentence. Cf. United States v. Dorcely, 454 F.3d 366, 376 (D.C.Cir.2006) (appellate presumption of reasonableness for within-Guidelines sentence).
Third, in thinking about the overall reasonableness of the special conditions of supervised release in this case, we cannot lose sight of the sentence as a whole. As the cross-relationship between Sections 3583 and 3553 indicates, Congress considered imprisonment and supervised release, including attendant conditions, to be elements of a single sentencing package. Here, Malenya was sentenced to only one year and a day in prison, a fairly short prison term for a 41-year-old who attempted to have sex with someone he knew to be 14 years old. After all, the statutory maximum sentence Malenya could have received under the D.C.Code provision to which he pled guilty was three years’ imprisonment. See D.C.Code §§ 22-3010.02(b), 24-403.01. And the federal offense for which Malenya was originally indicted, attempted enticement of a minor in violation of 18 U.S.C. § 2422(b), carried a federal mandatory minimum of 10 years’ imprisonment. But for the Government’s exercise of prosecutorial discretion, Malenya would have been subject to that 10-year mandatory minimum sentence for his conduct.
The relative brevity of Malenya’s term of imprisonment certainly bears on any assessment of the severity of the special conditions. After all, living in freedom subject to a few special conditions is — at least up to a point, depending on the nature of the special conditions — a far lesser restraint on a defendant’s liberty than living in prison. Moreover, when as here a district court selects a shorter term of imprisonment, it may correspondingly want to impose more restrictive special conditions of supervised release — or a lengthier term of supervised release — in order to achieve Section 3553(a)’s goals of deterrence and protection of the public. See 18 U.S.C. § 3553(a)(2)(B)-(C); United States v. Albertson, 645 F.3d 191, 198 (3d Cir.2011) (because of the “interplay between prison time and the term of supervised release,” “a district court may find it proper to impose a longer term of supervised release to follow, a relatively shorter term of imprisonment”).
Fourth, the special conditions in Malen-ya’s case apply for only three years. Contrast that limited term with the lengthy terms of supervised release in some of our recent cases involving sex offenders. See, e.g., United States v. Accardi, 669 F.3d 340, 343-46 (D.C.Cir.2012) (40 years); United States v. Love, 593 F.3d 1, 5 (D.C.Cir.2010) (life term). The relatively short duration of Malenya’s term of supervised release diminishes the overall impact of the special conditions on Malenya’s liberty, and further shows that the District Court was careful to impose special conditions that were not more restrictive than “reasonably necessary.”
Ill
With those four overarching considerations in mind, I turn now to specific analysis of. the disputed special conditions. Applying our deferential standard of review, I would uphold all but one of the special conditions.
One group of disputed special conditions limits Malenya’s ability to undertake certain activities: owning or using a computer, accessing the Internet, contacting mi *565 nors directly, and working, volunteering, or residing with minors. Importantly, however, Malenya is not banned from those activities. Rather, Malenya must simply obtain the approval of the United States Probation Office before engaging in any of those activities.
Malenya’s probation officer will presumably exercise his or her discretion in an appropriate manner befitting Malenya’s circumstances. As this Court has emphasized in a prior case, we can “assume the Probation Office will reasonably exercise its discretion” to lift a prohibition when that prohibition “no longer serves the purposes of [the defendant’s] supervised release.” United States v. Love, 593 F.3d 1, 12 (D.C.Cir.2010). If the probation officer acts arbitrarily, such as in policing Malenya’s use of a computer, Malenya may petition the district court to modify the special conditions and cabin the officer’s discretion. See 18 U.S.C. § 3583(e)(2); United States v. Legg, 713 F.3d 1129, 1134 (D.C.Cir.2013); United States v. Padilla, 415 F.3d 211, 223 (1st Cir.2005) (en banc). With that point in mind, I do not believe that the District Court abused its discretion in imposing those special conditions.
Relatedly, Malenya contends that some of the terms in the special conditions are impermissibly vague, including the terms “close proximity” and “significant romantic relationship.” But again, Malenya may consult with his probation officer or, as appropriate, the district court regarding the proper construction of those terms should Malenya disagree with how they are applied in practice by the probation officer. See United States v. Forde, 664 F.3d 1219, 1224-25 (8th Cir.2012).
Another special condition forbids Malen-ya from using a computer to view pornography. But that prohibition is hardly onerous, and it is justified for an admitted sex offender by the apparent “connection” that courts have recognized “between pornography and sex crimes.” United States v. Laureys, 653 F.3d 27, 35 (D.C.Cir.2011) (citing United States v. Sebastian, 612 F.3d 47, 52 (1st Cir.2010); Amabel v. Reno, 156 F.3d 192, 199-201 (D.C.Cir.1998)).
An additional special condition requires Malenya to enroll in a sex offender treatment program. But that requirement is manifestly appropriate for a contact sex offender such as Malenya. Sex offender treatment programs can reduce the risk of recidivism and allow clinical therapists to supervise sex offenders' during their reintegration into society. Cf. McKune v. Lile, 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (plurality opinion) (“Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism.”).
Another special condition prohibits Malenya from “entering into any area where children frequently congregate.” Tr. Sentencing Hearing at 43, Aug. 20, 2012. But that special condition certainly makes sense for a defendant such as Malenya who has already tried to have sex with someone he knew to be 14 years old. Malenya expresses concern that this special condition would forbid many day-to-day activities. But even if the condition were considered problematic in the abstract, sensibly interpreted it applies only to entering areas such as schools and children’s playgrounds where children are commonly present in large numbers. It cannot reasonably and should not be read to proscribe casual or chance encounters or entering areas such as theaters or shopping malls unless those venues are, for example, a children’s theater or a mall catering specifically to children. See United States v. Burroughs, 613 F.3d 233, 246 (D.C.Cir.2010); see also Arciniega v. Freeman, 404 *566 U.S. 4, 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971). Again, Malenya may consult with his probation officer if he has questions.
To reiterate, moreover, my analysis of all of the special conditions is buttressed by the surrounding circumstances here: Malenya tried to have sex with a 14-year-old, the special conditions here are common (and thus have been deemed reasonable by many district court judges) for sex offenders, Malenya received a relatively short prison sentence, and the length of the term of supervised release is also relatively short. Therefore, I would uphold all of the special conditions of supervised release, with one exception. I would vacate the special condition that authorizes penile plethysmograph testing. That procedure implicates significant liberty interests and would require, at a minimum, a more substantial justification than other typical conditions of supervised release. See United States v. McLaurin, 731 F.3d 258 (2d Cir.2013). Such a justification is not present on this record. In light of the record in this case and the significant liberty interests infringed by this invasive procedure, I would vacate that one special condition.
IV
In vacating the special conditions, the majority opinion, among other things, says that the District Court did not sufficiently explain its reasoning for the special conditions. But in imposing the sentence, including the special conditions of supervised release, the District Court carefully and painstakingly explained the Section 3553(a) sentencing factors and how the competing considerations played out in this case. Contrary to the suggestion in the majority opinion, moreover, the District Court did not ignore mitigating factors. The District Court stressed Malenya’s remorse, military service, and lack of criminal history, and emphasized that this was a “difficult case.” See Tr. Sentencing Hearing at 37-41, Aug. 20, 2012. A review of the sentencing transcript shows that the District Court grappled with and plainly understood the relevant sentencing factors. As our precedents have repeatedly said, although the district court must consider the Section 3553(a) factors, it need not expressly address all of them at the sentencing hearing. See, e.g., United States v. Brinson-Scott, 714 F.3d 616, 626 (D.C.Cir.2013) (“[T]he district court’s explanation did not invoke any of the section 3553(a) factors by name. But we do not require that it do so. Sentencing, after all, is not a game of Simon Says.”); United States v. Simpson, 430 F.3d 1177, 1186 (D.C.Cir.2005). As I read the record, the District Court did its job here and committed no procedural error.
# * *
A 41-year-old man sought to have sex with someone he knew to be 14 years old. That is a serious crime. With the one exception described above, I would uphold the special conditions imposed by the District Court. I respectfully dissent.

. Malenya here challenges the District Court’s imposition of special conditions of supervised release that require that he: (1) "not possess or use a computer or have access to any online service without the prior approval of the United States Probation Office”; (2) "not use a computer, Internet capable device, or similar electronic device to access pornography of any kind”; (3) "have no direct contact with minors under the age of 18 without the written approval of the probation officer”; (4) "refrain from entering into any area where children frequently congregate, including but not limited to schools, day care centers, theme parks, theatres, playgrounds, shopping malls, swimming areas, community recreation centers, and arcades”; (5) “not be employed in any capacity that may cause [him] to come into direct contact with children, except under circumstances approved in advance by the supervisory probation officer” and not "work or volunteer for any business or organization that provides services or employs persons under 18 years of age without the permission of the U.S. Probation Office”; (6) "participate in [a] program of sex offender assessment and treatment as directed by the probation officer”;. (7) "submit to penile plethysmograph testing as directed by the United States Probation Office”; (8) not reside "in close proximity to locations frequented by children such as schools, playgrounds, public pools, and video galleries”; (9) not reside "where minor children also reside ... without the permission of the U.S. Probation Office”; and (10) "notify the U.S. Probation Office when [he] establishes] a significant romantic relationship” and "inform the other party of [his] prior criminal history.” Tr. Sentencing Hearing at 42-45, Aug. 20, 2012.