Opinion for the Court filed PER CURIAM.
Opinion concurring in part and dissenting in part filed by Circuit Judge HENDERSON.
Opinion dissenting in part filed by Circuit Judge BROWN.
PER CURIAM:
Brandon Laureys appeals his conviction for attempted enticement of a minor under 18 U.S.C. § 2422(b) and for traveling across state lines with intent to engage in illicit sexual conduct under § 2423(b). Laureys argues that the evidence was insufficient to support his conviction and that his trial counsel provided constitutionally ineffective assistance in violation of the Sixth Amendment. Laureys also challenges the conditions of supervised release the district court imposed at sentencing. We reject Laureys’s challenge to the sufficiency of the evidence and to the conditions of supervised release. We remand for an evidentiary hearing on his ineffective assistance claim.
I
The present case arises from Laureys’s online communication in 2008 with Detective Timothy Palchak, who was impersonating a child molester with access to a minor. Unfortunately, this was not Laureys’s first encounter with Palchak.
Laureys first communicated with Palchak in 2006, in a Yahoo chat room. Palchak was posing as a twelve-year-old girl *30 home alone. Laureys — then 20 years old — drove to an address provided by the “girl” and was promptly arrested. Laureys pled guilty to enticement of a minor under D.C. law, and was sentenced to 36 months with all but 8 months suspended.
Laureys was out on probation when the events relevant to this case took place. In November 2008, Palchak- — -this time playing the part of an adult male — nabbed Laureys again. Palchak’s alter ego, “Jim,” employing the username “DaughterLover_Maryland,” advertised on an “Incest Forum Meeting Place” at IncestTaboo.com that he was a 38-year-old white male “into no limit fun.” His advertisement bore the warning “Discreet only.” The next day Laureys responded to Jim’s advertisement via Yahoo private message. After exchanging their “stats” (age, sex, and location), the men started discussing their sexual interest in young girls. When “Jim” asked “what ages are your fav[orites]?” Laureys responded, “9-11 or 12 maybe ... maybe 8. maybe 13 ... [I] can[’]t pick .... love [th]em all lol.” [1] When Laureys learned that Jim’s girlfriend frequently brought her nine-year-old daughter over to Jim’s place and that Jim had been “messing around” with the girl, Laureys expressed excitement, requested photos of the girl, and ultimately asked to be invited over to “help with the little girl.” Laureys assured Jim he would “make sure she wants to do it,” and offered to “watch her an[d] [Jim] [un]til she feels more comfortable.” When Jim said he “would love to see her with another” man, Laureys replied enthusiastically that he “would definitely] be all about that,” adding that he would “teach her to take two at once.” After Jim electronically sent a girl’s picture to Laureys during the chat, Laureys expressed excitement, told Jim “you ... NEED to let me hang out with her[,] man,” and asked him in explicit terms about his sexual conduct with the girl depicted in the photograph.
In the course of this conversation, Laureys and “Jim” arranged to meet each other. Jim initially suggested “get[ting] a beer first to make sure we are comfortable[,] then hav[ing] fun at my [place].” Instead, Laureys proposed meeting at Jim’s home “if you got anything fun we could watch or something while we’re there.” Eventually, the men arranged to meet each other at an address near Jim’s apartment, and Jim asked Laureys to call him.
During a gap of more than two minutes in the time-stamped chat transcript, Laureys called Jim. Laureys and Palchak agree there was no mention of the girl during the unrecorded phone call. Laureys testified at trial that in the phone call he reassured Jim he was discreet and said “I just want a quick blow job and go. My girlfriend doesn’t even know that I still mess with guys.” According to Laureys, Jim responded, “Okay, we’re on the same page.” Palchak testified, however, that during the phone call, Jim asked Laureys if he was discreet, the men exchanged physical descriptions again, and Laureys described the car he would be driving.
The men quickly ended their chat, and Laureys left in his car to meet Jim. When he reached the address Jim had provided, Laureys was arrested.
At trial, Laureys testified in his own defense, and Palchak testified for the prosecution. At the close of all the evidence, Laureys moved for a judgment of acquit *31 tal, and the district court denied the motion.
The jury convicted on all counts. The district court sentenced Laureys to ten years (the mandatory minimum) under 18 U.S.C. § 2422(b) for enticement of a minor, five years (concurrent) under § 2423(b) for traveling in interstate commerce to engage in illicit sexual conduct, and an additional 10 years (consecutive) as required by § 2260A for committing these crimes as a registered sex offender. Laureys raised no objection to the sentence or to the terms of supervised release the district court imposed at sentencing.
II
Laureys argues the Government’s evidence was insufficient to prove his intent to persuade a minor to engage in sexual activity under § 2422(b) and to prove his intent to engage in sexual conduct with a minor under § 2423(b). “We review a trial court’s denial of a motion for judgment of acquittal de novo, considering the evidence in the light most favorable to the government and determining whether, so read, it is sufficient to permit a rational trier of fact to find all of the essential elements of the crime beyond a reasonable doubt.” United States v. Kayode, 254 F.3d 204, 212 (D.C.Cir.2001) (alterations omitted) (quoting United States v. Harrington, 108 F.3d 1460, 1464 (D.C.Cir.1997)). The evidence in this case may be susceptible of more than one interpretation, but we cannot say it was insufficient for the jury to find the necessary intent beyond a reasonable doubt.
A
Laureys devotes just two pages in each of his briefs to the sufficiency of the evidence. His only argument against both counts is that the evidence does not prove his intent to have sex with a minor. According to Laureys, the transcript of his chat shows he only wanted a quick and legal liaison with “Jim.” Laureys’s references to the fictional girl were, he says, pure fantasy. Laureys points to certain turns of phrase, such as “down low,” “discreet,” and “perv out” that he says are consistent with his intent to engage in same-sex intercourse with an adult male, but not an underage girl. Even if we were to accept the connotations Laureys attributes to these phrases, and which he argued to the jury, we would have no basis for reversing the jury’s conviction. The rest of the evidence, viewed in the light most favorable to the Government, permitted the jury reasonably to find Laureys meant what he said, whether or not he also intended to have sex with Jim.
Laureys is a self-described “bisexual ... sexual addict” with a “sexual attraction to children” that he expects to “live with the rest of [his] life.” Tr. 5/26/2010, at 316, 373. Laureys admits he intended to have sex with a fictitious twelve-year-old girl in 2006, id. at 318, and he responded to DaughterLover_Maryland’s advertisement on a website that he admitted to frequenting “as part of [his] sexual attraction” to little girls, id. at 365 — a website Detective Palchak described as a meeting place for persons seeking sex with children. Tr. 5/25/2010, at 144. Laureys chatted in explicit terms about sexual conduct with a particular nine-year-old girl Jim said frequented his apartment. Laureys asked for pictures of the girl and pleaded with Jim, “you ... NEED to let me hang out with her[,] man.” Laureys then arranged to meet Jim at his apartment. Viewed together, this evidence was more than sufficient to support the jury’s findings that Laureys attempted to persuade Jim to grant him sexual access to a child and then travelled to the District for the purpose of engaging in sexual conduct with her.
*32 Judge Brown’s dissent raises two additional arguments concerning a jury instruction pertaining to § 2422(b) and the evidence required for a conviction under § 2423(b). We address each in turn.
B
The dissent objects sua sponte to the district court’s instruction that the jury could convict under § 2422(b) if the Government proved Laureys knowingly attempted to persuade an adult to arrange for a child to engage in sexual activity. According to the dissent, § 2422(b) requires intent to persuade the minor herself, not an adult intermediary. That statute provides,
Whoever, using ... any ... means of interstate ... commerce ... knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be ... imprisoned not less than 10 years or for life.
18 U.S.C. § 2422(b).
We need not wade into this question of statutory interpretation because Laureys has not raised it.[2] Laureys asked “Jim” in no uncertain terms to grant him access to the girl Jim claimed to be molesting, and that is the theory under which the jury convicted him. It is not our duty to sift the trial record for novel arguments a defendant could have made but did not. See Potter v. District of Columbia, 558 F.3d 542, 553 (D.C.Cir.2009) (Williams, J., concurring) (“[Jjudges ‘are not like pigs, hunting for truffles buried in briefs’ or the record.” (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991))). Moreover, the instruction at. issue was proposed jointly by the defense and the prosecution, Dist. Ct. Docket No. 30, at 4-5, and “[i]f a defendant invites error by the district court, he is ‘barred from complaining about it on appeal.’ ” United States v. Ginyard, 215 F.3d 83, 88 (D.C.Cir.2000) (quoting United States v. Harrison, 103 F.3d 986, 992 (D.C.Cir.1997)).
Even if Laureys had properly challenged on appeal the district court’s formulation of the requisite intent, our review would be for plain error because he did not object to the jury instructions at trial. See United States v. Bryant, 523 F.3d 349, 353 (D.C.Cir.2008). Under that standard, Laureys would have to establish “(1) a legal error that was (2) plain (a term that is synonymous with clear or obvious), and that (3) affected his substantial rights.” Id. (quotation marks and alterations omitted). “Even if these three conditions are met, we will correct a plain error as a matter of discretion only if the error seriously affected the fairness, integrity or public reputation of judicial proceedings.” Id. at 353-54 (quotation marks and alterations omitted).
Laureys cannot make the basic threshold showing of plain error. “Generally an error is plain if it contradicts circuit or Supreme Court precedent.” In re Sealed Case, 573 F.3d 844, 851 (D.C.Cir.2009). The district court’s instructions contradicted no precedents of this Court or the Supreme Court. Rarely do we find an error to be plain where “this court has not ruled on the question.” United States v. *33 Thomas, 896 F.2d 589, 591 (D.C.Cir.1990). As the dissent has aptly pointed out in another context, “issues of first impression present plain error only when they tread upon ‘a well-established constitutional or legal principle.’” United States v. Burroughs, 613 F.3d 233, 248 (D.C.Cir.2010) (Brown, J., dissenting) (quoting United States v. Blackwell, 694 F.2d 1325, 1342 (D.C.Cir.1982)). Even if the dissent’s interpretation of § 2422(b) is correct — a question we need not consider — we can hardly say it is “well-established.” To the contrary, every circuit to consider the issue has concluded a defendant can violate § 2422(b) by communicating with an adult intermediary rather than a child or someone believed to be a child. See United States v. Berk, 652 F.3d 132, 140 (1st Cir.2011); United States v. Lanzon, 639 F.3d 1293, 1299 (11th Cir.2011); United States v. Douglas, 626 F.3d 161, 164-65 (2d Cir.2010); United States v. Nestor, 574 F.3d 159, 160-62 (3d Cir.2009); United States v. Spurlock, 495 F.3d 1011, 1013-14 (8th Cir.2007). Under the law of those circuits, “inducing” a minor to engage in sexual activity does not necessarily require direct communication with the minor; a minor’s “assent might be obtained, for example, by persuading a minor’s adult guardian to lead a child to participate in sexual activity.” Douglas, 626 F.3d at 164; see, e.g., United States v. Lee, 603 F.3d 904, 913 (11th Cir.2010); Nestor, 574 F.3d at 162 n. 4. We do not have to determine these courts are correct to determine their view of the law is not plainly erroneous.
C
According to Judge Brown, we should also reverse Laureys’s conviction under § 2423(b) because the evidence is insufficient to prove Laureys believed he was going to meet a child at Jim’s apartment. The statute provides that “[a] person who travels in interstate commerce ... for the purpose of engaging in any illicit sexual conduct with another person shall be ... imprisoned not more than 30 years.” 18 U.S.C. § 2423(b). The dissent observes that, in response to a question, Palchak admitted there was no implication in the chat that the girl would be present at the initial meeting with Jim. Op. of Brown, J., at 44. Even so, the jury reasonably found Laureys’s trip to meet Jim was for the purpose of engaging in illicit sexual conduct with a minor. Reading the chat transcript in the light most favorable to the Government, it supports a reasonable inference that Jim would grant Laureys’s request to let him “hang out” with the girl, if an initial meeting between him and Jim was satisfactory. To that end, Jim suggested, “maybe we could get a beer first to make sure we are comfortable [and] then have fun at my [place].” Likewise, Laureys blocked his cell phone number “[just] [un]til we actually talk or [whatever].” A jury could reasonably conclude that this maneuvering was in anticipation of the intended sexual conduct with a minor.
Ill
Laureys claims he received ineffective assistance of counsel because his trial lawyer failed to call some potential witnesses to testify in his defense. Specifically, Laureys says his lawyer should have secured the testimony of Laureys’s psychologist and two men with whom Laureys had engaged in sex-oriented online chats. This testimony, Laureys argues, would have proven he lacked the requisite intent for each of his convictions.
In order to succeed on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel’s performance was deficient, and (2) that the deficient *34 performance prejudiced the defense. To establish deficiency, he must show his counsel’s representation fell below an objective standard of reasonableness. To establish prejudice, he must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.
United States v. Anderson, 632 F.3d 1264, 1268 (D.C.Cir.2011) (quotation marks, citations, and alteration omitted).
When a colorable claim of ineffective assistance is made for the first time on direct appeal, this Court generally will remand the claim for an evidentiary hearing “unless the trial record alone conclusively shows that the defendant either is or is not entitled to relief.” United States v. Rashad, 331 F.3d 908, 909-10 (D.C.Cir.2003) (quotation marks omitted). Applying that standard, we remand Laureys’s ineffective assistance claims for analysis by the district court in the first instance.
IV
The district court sentenced Laureys to a ten-year term of supervised release following imprisonment. Laureys challenges the conditions of supervised release that prohibit him, without the probation office’s prior approval, from loitering in arcades and parks, among other places where children congregate; possessing “any type of camera or video recording device”; and “patronizing] any place where pornography or erotica can be accessed.” Laureys also challenges the requirements that he keep a log of all internet addresses he accesses and that he consent to disclosure to his employer of the computer-related restrictions.
A sentencing court has discretion to impose any condition of supervised release that is “reasonably related” to “the nature and circumstances of the offense”; “the history and characteristics of the defendant”; the deterrence of criminal conduct; the protection of the public from the defendant; and the effective provision of educational, vocational, medical, or correctional services to the defendant; provided the condition is consistent with the Sentencing Guidelines and “involves no greater deprivation of liberty than is reasonably necessary.” 18 U.S.C. §§ 3583(d), 3553(a); see United States v. Burroughs, 613 F.3d 233, 239-40 (D.C.Cir.2010).
Because Laureys did not object at sentencing to the conditions of his supervised release, our review is for plain error. See Burroughs, 613 F.3d at 240. On plain error review, we will vacate a condition of supervised release only if it is “plainly out of sync with the statutory goals enumerated in § 3553(a).” Id. Under that standard, each of Laureys’s challenges must fail.
His challenges to the restrictions on loitering in arcades and parks and on possessing a camera are foreclosed by United States v. Love, a child pornography case with similar facts to Laureys’s, in which we upheld the same conditions on plain error review. 593 F.3d 1, 14 (D.C.Cir.2010) (citing United States v. Sullivan, 451 F.3d 884 (D.C.Cir.2006)). Especially in light of Laureys’s requests for photographs of his child-victims, we cannot conclude these conditions are “plainly out of sync” with “the nature and circumstances of the offense and the history and characteristics of the defendant,” 18 U.S.C. §§ 3583(d), 3553(a)(1), and with the need “to protect the public from further crimes of the defendant,” id. § 3553(a)(2)(C).
For the same reason, Laureys cannot succeed in his challenge to the ban on patronizing any place where pornography can be accessed. In United States v. Sullivan, we dismissed as “meritless” a challenge to the same condition by a defendant *35 convicted of possessing child pornography. 451 F.3d at 887, 896. Although Laureys’s crimes are different, some studies have found a connection between pornography and sex crimes, see Amatel v. Reno, 156 F.3d 192, 199-201 (D.C.Cir.1998); see also United States v. Sebastian, 612 F.3d 47, 52 (1st Cir.2010) (noting a possible “link between recidivism of sexual offenders and exposure to pornography”). Moreover, Laureys’s suggestion to Jim that they meet at his place “if you got anything fun we could watch” supports a reasonable inference that pornography is relevant to Laureys’s attempted predations. A condition of supervised release that limits Laureys’s access to pornography is thus not “plainly out of sync” with the § 3553(a) factors. Contrary to Laureys’s interpretation of our decision in Love, that case does not compel a different result. We vacated the condition in Love, because it appeared only in the written judgment, 593 F.3d at 11, and “the written judgment form is a nullity to the extent it conflicts with the previously pronounced sentence,” id. at 9 (quoting United States v. Booker, 436 F.3d 238, 245 (D.C.Cir.2006)). In the absence of any precedent “that is even arguably inconsistent” with the application of that condition to a child predator, Laureys cannot show that the district court plainly erred. Sullivan, 451 F.3d at 896.
Finally, the computer-related conditions of supervised release are not plainly erroneous. For good reason, Laureys does not challenge the most restrictive of these — a total ban on the possession or use of a computer with internet access without prior approval from the probation office. We upheld the same condition on review for abuse of discretion in Love. 593 F.3d at 12. Because the defendant in that case had also “solicited sex with Palchak’s fictitious daughter” online, we concluded the broad restriction on internet access “[was] properly tailored to the circumstances of the offense and [the defendant’s] background, and it [was] reasonably necessary to deter future misconduct and to protect children.” Id. The more limited restrictions Laureys does challenge come nowhere close to plain error. We vacated a similar log-keeping requirement in United States v. Burroughs, because “Burroughs did not use a computer to facilitate his crimes.” 613 F.3d at 242. But Laureys did. In the offenses underlying both the present case and his 2006 conviction, Laureys used the internet to facilitate criminal sexual conduct with minors. That Laureys will need the probation office’s permission to use the internet is likely relevant to an employer’s decision to hire him. So too are the requirements that he log his internet access and that he “submit to periodic unannounced examinations of ... any computer accessed by him” — a condition Laureys does not appeal. “We see no reason why potential employers should not be made aware of [these] fact[s].” Burroughs, 613 F.3d at 246.
V
For the foregoing reasons, we reject Laureys’s challenges to his conviction and to the conditions imposed on his term supervised release, but we remand for an evidentiary hearing on whether his trial counsel provided ineffective assistance.

So ordered.

. See Oxford English Dictionary Online (defining "lol," "the initial letters of laughing out loud,” as an interjection used "[o]riginally and chiefly in the language of electronic communications ... to draw attention to a joke or humorous statement, or to express amusement”), http://www.oed.com/view/Entry/ 291168 (last visited August 8, 2011).

. As the Government's brief notes, Laureys "does not dispute that the statute is violated where a defendant communicates with an adult with access to the minor rather than directly with the minor.” Appellee’s Br. at 30 n. 16. Indeed, Laureys’s counsel declined Judge Brown’s invitation at oral argument to make an issue of the instruction. Oral Arg. 11:48-12:45.