# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 5, 2012   Decided April 19, 2013

No. 11-3077

UNITED STATES OF AMERICA,
APPELLEE

v.

ROBERT LEGG,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00121-1)

*Steven R. Kiersh*, appointed by the court, argued the cause and filed the brief for appellant.

*David C. Rybicki*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Julieanne Himelstein*, Assistant U.S. Attorneys.

Before: GARLAND, *Chief Judge*, KAVANAUGH, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: Appellant Robert Legg pled guilty to persuading a person to travel in interstate commerce to engage in criminal sexual activity. He was sentenced to 30 months' incarceration and 180 months' supervised release. On appeal, Legg challenges supervised release conditions that relate to his use of computers and the Internet. We affirm the judgment of the district court.

I

On November 11, 2010, Legg accessed a social-networking website using the screen name "BBDCcumpig." 5/11/11 Tr. 20. There, he found a person whose profile indicated interest in sexual activity with young people and a desire to meet other "no limit pervs" in Washington, D.C. *Id.* The profile in fact belonged to Timothy Palchak, a Metropolitan Police Department detective who has become a familiar figure in the opinions of this circuit. *See United States v. Accardi*, 669 F.3d 340, 343 (D.C. Cir. 2012); *United States v. Laureys*, 653 F.3d 27, 29-30 (D.C. Cir. 2011); *United States v. Love*, 593 F.3d 1, 4 (D.C. Cir. 2010). Detective Palchak was monitoring the website in an undercover capacity as part of a multi-jurisdictional child exploitation task force.

Legg used the website to send a message to Palchak saying, "no limit perv here, too," and indicating an interest in incest and sex with minors. 5/11/11 Tr. 20. During their online conversation, Palchak claimed to have access to a thirteen-year-old boy, and Legg expressed interest in meeting and engaging in anal sex with the boy. *Id.*; 8/11/11 Tr. 27. Legg and Palchak exchanged telephone numbers online and then had several telephone conversations, during which Legg identified himself as "Aleck" and further described his fantasies about having sex with the boy. The two made arrangements to meet with each other and the boy (who supposedly lived in Virginia) at an

apartment in D.C., where they planned to have sex with the boy and take drugs together. On the afternoon of November 12, 2010, Legg met Palchak and confirmed that he was Aleck. At that point, Legg was arrested. *See* 5/11/11 Tr. 21, 25, 33-34.

On May 11, 2011, Legg pled guilty to the charge of persuading a person to travel in interstate commerce to engage in criminal sexual activity. *See* 18 U.S.C. § 2422(a). On August 11, 2011, the district court sentenced Legg to 30 months' imprisonment and 180 months' supervised release. The court noted that Legg had been diagnosed with a variety of mental health problems and had a long history of illegal drug use. Given the defendant's history and the nature and circumstances of his crime, the court concluded that he posed a danger to the community and would require mental health, drug abuse, and sex offender treatment to "prevent any kind of recidivism." 8/11/11 Tr. 29; *see id.* at 23-25, 32-33.

The court also imposed a list of supervised release conditions in the interest of promoting Legg's rehabilitation and protecting the community from potential recidivism on Legg's part. These included: sex offender registration, substance abuse and sex offender treatment, a ban on the possession of pornography of any kind, a ban on alcohol and drug use, a requirement that the defendant neither loiter in any area where children frequently congregate nor take (without approval of the probation office) a job that might cause him to come into contact with children, and a ban on possession of any type of camera or video recording device without probation office approval. Judgment at 3-5.

Finally, and most relevant here, the district court imposed a number of restrictions on Legg's use of computers and the Internet during his 180-month period of supervision. The court forbade him from possessing or using a computer or any online

service without prior approval of the probation office. It also required him both to identify all computer systems and Internet-capable devices to which he would have access, and to allow random searches of, and installation of monitoring programs on, those devices. And it limited him to the possession of only one personal Internet-capable device. *Id.* at 4.

At sentencing, counsel for the defendant raised only one objection relating to the computer- and Internet-related conditions. Legg's counsel conceded that most of those conditions were "pretty standard in cases like this," but expressed concern about the single-device restriction in particular, noting that "in today's age . . . telephones [and the] . . . tablets that have become so popular" can generally access the Internet. 8/11/11 Tr. 49-50. The court clarified that the single-device restriction extended only to "personal" devices, and that this did not include workplace equipment. *Id.* at 50. The court also said that the defendant could have a cell phone, but would have to decide "whether he wants his Internet access on the computer or on the cell phone" -- he could not have Internet capability on both. *Id.* at 51. The court explained that the purpose of the limitation was to make the probation office's monitoring of Legg's Internet use feasible. *Id.* at 50.

Legg filed a timely appeal, challenging the conditions of supervised release that relate to his computer access and use of the Internet.

II

District courts are broadly authorized to impose conditions of supervised release that are "reasonably related to the nature and circumstances of the offense, the history and characteristics of the defendant, deterrence of criminal conduct, protection of the public, and treatment of the defendant's correctional needs."

*Accardi*, 669 F.3d at 346; *see* 18 U.S.C. § 3583(d)(1); *id.* § 3553(a). In addition to this "reasonable relationship" requirement, conditions of supervised release must "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of deterrence, protection of the public from further crimes of the defendant, and effective correctional treatment. 18 U.S.C. § 3583(d)(2); *see id.* § 3553(a); *United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006). The conditions must also be consistent with pertinent policy statements issued by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(a). 18 U.S.C. § 3583(d)(3).

Sentencing judges, although constrained by these statutory limits, are nonetheless afforded wide discretion when imposing terms and conditions of supervised release, *see Accardi*, 669 F.3d at 346; *Sullivan*, 451 F.3d at 895, and we review the imposition of supervised release conditions only for abuse of that discretion, *see Love*, 593 F.3d at 11; *Sullivan*, 451 F.3d at 895. Moreover, when a defendant fails to make a timely objection before the district court and instead raises his argument for the first time on appeal, we review only for plain error. *See Accardi*, 669 F.3d at 346; *Sullivan*, 451 F.3d at 892.

On this appeal, Legg challenges all of the computer- and Internet-related conditions of his supervised release. In the district court, however, he objected to only one of those conditions: the single-device restriction. Accordingly, both Legg and the government agree that the proper standard of review for the unobjected-to conditions is plain error, while the standard for the single-device restriction is abuse of discretion. *See* Oral Arg. Recording at 4:38-5:00 (statement of Legg's counsel); Gov't Br. 11.

6

III

1. Legg's opening argument regarding the unobjected-to release conditions is that they are unreasonable because "the crime to which he pled occurred through the use of a telephone and not a computer." Legg Br. 1. By the end of his brief, he qualifies this factual claim, arguing only that "the *significant majority* of the charged crime occurred over the telephone." *Id.* at 7 (emphasis added). But it is hardly necessary to precisely characterize the role that a computer (and the Internet) played in Legg's offense. A policy statement issued by the Sentencing Commission recommends that, for offenses including Legg's, the sentencing court impose "[a] condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items." U.S. SENTENCING GUIDELINES MANUAL § 5D1.3(d)(7)(B); *see id.* § 5D1.2, Application Note 1. And this court has stated that such limitations "may be appropriate for those who use the Internet to initiate or facilitate the victimization of children." *Love*, 593 F.3d at 12 (internal quotation marks omitted); *Laureys*, 653 F.3d at 35 (finding no plain error in Internet restrictions where the defendant "used the internet to facilitate criminal sexual conduct with minors").

There is no dispute that Legg "used" a computer in this case, and that he used it both to "initiate" and "facilitate" his offense. Legg used a computer to access the social-networking website on which he found Detective Palchak's profile, used it to reply to Palchak's posting seeking "other no limit pervs in D.C.," used it to converse with Palchak about "young" sexual encounters, used it to tell Palchak that he was interested in meeting him for the purpose of engaging in anal intercourse with a 13-year-old boy whom Palchak had mentioned, and used it to exchange telephone numbers with Palchak to coordinate their in-person meeting. 5/11/11 Tr. 19-21, 27-29. Indeed, if Legg had not used a computer to log into the website on which he met

Detective Palchak, the offense for which he was convicted would not have occurred at all.

The fact that the final communications arranging the in-person meeting took place over the telephone does not detract from this conclusion. In *Laureys*, a case in which the defendant had likewise fallen for Detective Palchak's online ruse, we found no plain error in a challenge to extensive computer-related conditions of supervised release. 653 F.3d at 29-30, 35. That case cannot meaningfully be distinguished from this one along the lines Legg suggests, as there, too, the final meeting arrangements were made in a telephone call between Palchak and the defendant. *Id.* at 30.

Legg tries to analogize his case to *United States v. Burroughs*, in which this circuit vacated as plainly erroneous a requirement that the defendant submit to probation office monitoring of his computer use and keep a daily log of his personal Internet activity. 613 F.3d 233, 242-44 (D.C. Cir. 2010). But in *Burroughs*, the defendant -- who sexually abused a teenage girl and introduced her to prostitution -- "did not use a computer to facilitate his crimes" in any way. *Id.* at 242. Because Legg did use a computer, *Burroughs* is simply inapposite.

It is true, as Legg points out, that the district court declined to increase his sentence by imposing a two-level Sentencing Guidelines enhancement for use of a computer, *see* U.S. SENTENCING GUIDELINES MANUAL § 2G1.3(b)(3), noting that the "meat of the offense w[as] done on the phone," 8/11/11 Tr. 8-9. (Although the court did characterize its decision not to impose the enhancement as "a little close." *Id.* at 9.) At the same time, however, the court noted that "the decision to meet [wa]s on the computer," *id.*, and told Legg that it was "appropriate to have these restrictions" because he had "use[d]

. . . the computer to communicate and initiate the offense," *id.* at 36. *See also id.* at 37 ("I am restricting you based on the fact that that is the way you communicated with the undercover officer."). Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), the Guidelines have been advisory only, and there is no abuse of discretion in declining to increase a defendant's sentence on account of his computer use while simultaneously concluding that such use warrants the imposition of limits on the defendant's access to a computer after his release. *A fortiori*, there is no plain error.

2. In the district court, Legg objected to the condition limiting him to only one Internet-capable device on the ground that it was too restrictive. On appeal, he adds no texture to that objection. We understand the objection, however, to constitute a claim that the limitation fails the requirement that conditions of supervised release must "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes of deterrence, protection of the public from further crimes of the defendant, and effective correctional treatment. 18 U.S.C. § 3583(d)(2).

The district court explained that the one-device limit was necessary to ensure that the probation office would be able to effectively monitor Legg's Internet use at reasonable cost. 8/11/11 Tr. 50-51. Given that the Internet was Legg's avenue of choice for seeking out a victim, there is no doubt that such monitoring is itself reasonably related to the nature and circumstances of Legg's offense, to deterring criminal conduct, and to protecting the public from further crimes. *Cf. Love*, 593 F.3d at 12 (another "Palchak" case in which the court found a prior approval requirement for Internet access "properly tailored to the circumstances of the offense and . . . reasonably necessary to deter future misconduct and to protect children"). Such monitoring would plainly be more difficult if the defendant had

multiple Internet-capable devices at his disposal. And Legg offers no argument at all against the district court's determination that, if it did not restrict the number of devices to which he had access, it would be too difficult for the probation office to monitor him.

The single-device limitation does not, of course, bar Legg from using computers or the Internet altogether. Moreover, the court made clear that, although Legg is limited to only one "personal" Internet-capable device, the limitation does not apply to computers or other devices he might use at work. 8/11/11 Tr. 50. Nor, the court said, does it bar him from having a cell phone in addition to a home computer, as long as only one of them is Internet-enabled. *Id.* And while the day may soon come when it is impossible to obtain a telephone that is not Internet-enabled, that time has not yet arrived. *See id.* (statement by probation officer that "there are plans that can be set up so he can have a [cell] phone that does not have Internet capabilities").

Although sentencing courts can and should seek to tailor computer-related supervised release conditions with an eye to the possibility of technological change, the fact remains that judges are not oracles of technological development. "An Internet restriction that today imposes 'no greater deprivation of liberty than is reasonably necessary' to deter illegal conduct may, by the time [the defendant] is released, be either wholly inadequate or entirely too burdensome." *Love*, 593 F.3d at 12. If the latter transpires, Legg remains free throughout his term of supervised release to ask the district court to modify the challenged conditions in light of changed circumstances, which the court is statutorily authorized to do. 18 U.S.C. § 3583(e)(2). But there are no grounds for finding that the district court abused its discretion in imposing the single-device restriction on the record the court had before it.

10

IV

For the foregoing reasons, the sentence imposed by the district court is

*Affirmed*.