# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 26, 2013          Decided December 3, 2013

No. 12-3069

UNITED STATES OF AMERICA,
APPELLEE

v.

TOM LUSULI MALENYA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cr-00045-1)

———

*Jonathan S. Jeffress*, Assistant Federal Public Defender argued the cause for appellant. With him on the briefs were *A.J. Kramer*, Federal Public Defender, and *Rosanna M. Taormina*, Assistant Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*James A. Ewing*, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman* and *Chrisellen R. Kolb*, Assistant U.S. Attorneys.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

Dissenting opinion filed by *Circuit Judge* KAVANAUGH.

WILLIAMS, *Senior Circuit Judge*: Tom Lusuli Malenya, a 41-year-old Army nurse, posted a personal ad on the "Men Seeking Men" section of Craigslist.com. D.R., who was 14 at the time, responded to Malenya's ad by e-mail and claimed to be an 18-year-old "twink"—someone who appears to be younger but who is actually an adult male between the ages of 18 and 23. Via text message, Malenya arranged for D.R. to come to his apartment, and the two had sex. A few weeks later, D.R.'s mother became concerned about the nature of D.R.'s relationship with Malenya and contacted the police. Using D.R.'s phone and pretending to be D.R., a detective sent a text message giving Malenya D.R.'s actual age and saying, "If your [sic] not cool its [sic] ok." Malenya responded, via text message, "As long as you do not tell anyone is [sic] cool." In another exchange of text messages the next day, Malenya arranged a second meeting at his apartment with D.R., and was arrested when a detective turned up instead of D.R.

In an information filed in the United States District Court for the District of Columbia, the United States charged Malenya with violations of 18 U.S.C. § 2422(b) and D.C. Code § 22-3010.02. Pursuant to a plea agreement, Malenya pled guilty to the D.C. Code violation. The court sentenced Malenya to a 36-month term of incarceration, suspended all but a year and a day, and imposed a 36-month term of supervised release subject to several special conditions. After

sentencing, the government moved to dismiss the federal charge, and the court granted the motion.

Malenya's objections to the conditions of supervised release are the sole merits subjects before us. We first address a couple of preliminary issues. On the merits, we find that the district court's own statements, and the sweeping nature of several of the conditions, demonstrate that the court failed to weigh the burden of the conditions on Malenya's liberty against their likely effectiveness, as required by 18 U.S.C. § 3583(d). We vacate the challenged conditions and remand the case to the district court to impose alternative conditions consistent with the governing statute.

* * *

Congress has granted the United States District Court for the District of Columbia jurisdiction over "[a]ny offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense." District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, title I, § 111, 84 Stat. 477, 478 (codified at D.C. Code § 11-502). The information here included both the federal offense and D.C. Code violation, so the district court had jurisdiction over the latter.

Disposition of the federal offense after proper joinder does not withdraw power over the local offense, *United States v. Kember*, 685 F.2d 451, 454 (D.C. Cir. 1982), but "when federal charges have faded from the case prior to trial," the court has discretion to divest itself of jurisdiction, reviewable for abuse of discretion, *id*. at 454, 455. Due to variations in procedure and substance between the two systems, some hesitance to retain jurisdiction over a properly joined D.C.

Code offense is in order once the federal charges have "faded from the case." Malenya, however, has not argued that the district court abused its discretion, and, because retention of a D.C. Code violation would not affect the district court's power to hear the case even where retention of the case was an abuse of discretion, see *id.* at 454 (citing *United States v. Kember*, 648 F.2d 1354, 1359 (D.C. Cir. 1980) (per curiam)), we need not raise the issue on our own.

In a footnote to its brief the government noted that § 11-502(3) does not explicitly address the district court's attachment of conditions to a term of supervised release. Govt. Br. 16-17 n.8. The government also pointed out that while in criminal cases in D.C. Superior Court the trial court sets the duration of any supervised release, it is the U.S. Parole Commission that imposes any conditions on that release. Compare D.C. Code § 24-403.01(b) (1-4) (duration), with D.C. Code § 24-403.01(b) (6) (conditions). We ordered the parties to brief the matter, and Malenya, while conceding that the district court could impose a sentence, including a term of supervised release, argued that its attachment of any conditions was error.

Given § 11-502(3)'s explicit grant of "*jurisdiction of . . . [a]ny offense* under any law applicable exclusively to the District of Columbia" (so long as the joinder requirement has been met) (emphasis added), there seems little basis for any claim that the district court exceeded its jurisdiction in imposing conditions on supervised release. Accordingly, the issue is subject to normal rules of forfeiture. See *United States v. Cotton*, 535 U.S. 625 (2002). As Malenya didn't raise the issue until prompted by the government's brief and our order, our review is only for "plain error" under Rule 52(b) of the Federal Rules of Criminal Procedure.

The error, if any, falls far short of satisfying the component of plain error review requiring that the error have been "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). The propriety of the district court's sentencing Malenya at all must be inferred from the general grant of jurisdiction in D.C. Code § 11-502(3), and, as defense counsel acknowledged, the same is true even for the court's imposing a term of supervised release. Thus any claim that the court's imposition of conditions on that supervised release is improper seems at least subject to reasonable dispute. Moreover, reading § 11-502(3) to allow the district court to attach conditions has the appeal of avoiding the peculiar result that no one can impose conditions on the supervised release of a defendant sentenced under § 11-502(3). Finding the supposed error not to be clear enough to qualify as plain error, we will not review Malenya's forfeited claim.

* * *

We start our review of the challenged conditions by setting them forth, as stated by the district court at sentencing, adding bracketed headings for convenience.

> [*Computer/internet access*.] [Y]ou shall not possess or use a computer or have access to any on-line service without the prior approval of the United States Probation Office; you shall identify all computer systems, Internet capable devices, and similar memory and electronic devices to which you have access, and allow installation of a computer and Internet-monitoring program.
>
> You are limited to possessing only one personal Internet capable device. Monitoring may include random examinations of computer systems, along with Internet,

electronic, and media storage devices under your control. The computer system or device may be removed for a more thorough examination, if necessary. You shall be responsible for the costs of such monitoring services.

[*Computer pornography access*.] You shall not use a computer, Internet capable device, or similar electronic device to access pornography of any kind. This includes but is not limited to accessing pornographic web sites, including web sites depicting images of nude adults or minors. You shall not use your computer to view pornography stored on related computer media such as CDs or DVDs, and shall not communicate via your computer with any individual or group who promotes the sexual abuse of children.

[*Preclusion of contact with minors*.] You shall have no direct contact with minors under the age of 18 without the written approval of the probation officer, and shall refrain from entering into any area where children frequently congregate, including but not limited to schools, day care centers, theme parks, theatres, playgrounds, shopping malls, swimming areas, community recreation centers, and arcades.

[*Preclusion of contact with minors in employment or volunteer work*.] You shall not be employed in any capacity that may cause you to come into direct contact with children, except under circumstances approved in advance by the supervisory probation officer. You shall not participate in any volunteer activity that may cause you to come in direct contact with children, except under those circumstance [sic] approved in advance by your probation officer.

. . .

[*Required sex offender treatment*.]  You shall participate in the program of sex offender assessment and treatment as directed by the probation officer until such time as you are released from the program.  This assessment and treatment may include physiological testing, such as polygraph, to assist in planning, case monitoring, and supervision.  At the direction of the probation officer, you shall pay for all or a portion of any treatment program.  Any refusal to submit to such assessment or tests as scheduled is a violation of the conditions of release.

You shall waive your right of confidentiality in treatment, and sign any necessary releases for any records imposed as a consequence of this judgment to allow the supervisory probation officer to review your course of treatment and progress with the treatment providers.

[*Physiological testing condition*.]  You shall submit to penile plethysmograph testing as directed by the United States Probation Office as part of your sex offender therapeutic treatment.  The costs of that testing are to be paid by you as directed by the probation office.

[*Limits on places of residence, employment and volunteering*.]  You shall have all residences, employment, and volunteer work preapproved by the U.S. Probation Office.  Your residence may not be in close proximity to locations frequented by children such as schools, playgrounds, public pools, and video galleries.  You shall neither reside in a residence where minor children also reside, nor shall you work or volunteer for any business or organization that provides services or employs persons under 18 years of age without the permission of the U.S. Probation Office.

. . . . [*Romantic relationship limit*.] You shall notify the U.S. Probation Office when you establish a significant romantic relationship, and shall then inform the other party of your prior criminal history concerning your sex offenses. You understand that you must notify the U.S. Probation Office of that significant other's address, age, and where the individual may be contacted.

The government argues that plain error review should apply to two of the conditions—the computer pornography prohibition and the restriction on employment or volunteer work involving minors. This is incorrect. The Presentence Investigation Report ("PSR") identified both of these as suggested conditions for supervised release. Defense counsel responded with a brief that quoted § 3583(d)'s insistence that any imposed condition "involves no greater deprivation of liberty than is reasonably necessary" for the various sentencing goals set out in cross-referenced provisions. Counsel then asserted that all of the conditions set out in the PSR, except two not at issue in this appeal, were not "reasonably related to this case and all involve a greater deprivation of liberty than is reasonably necessary."

This objection both identified the conditions to which Malenya objected and the grounds on which he objected. Cf. *United States v. Love*, 593 F.3d 1, 11 (D.C. Cir. 2010). Malenya thus gave the court ample opportunity to avoid error by considering the mandate of § 3583(d). See Fed. R. Crim. P. 51(b). Our review of the challenged conditions is for abuse of discretion. *Love*, 593 F.3d at 11. In such a review we ask "whether the district court considered the prescribed factors and clearly articulated their effect on its decision." *United States v. Wright*, 6 F.3d 811, 813 (D.C. Cir. 1993). Failure to apply the correct legal standard itself constitutes an abuse of discretion. *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

By statute the district court may impose conditions of supervised release (other than certain mandatory ones) if the conditions are "reasonably related" to factors set forth in 18 U.S.C. § 3553 and "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes" identified in that section.  18 U.S.C. § 3583(d) (1), (2).

The statute identifies the permissible purposes by means of complex cross-references, but the Sentencing Commission has restated those purposes by providing that the conditions must be

> reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

U.S. Sentencing Guidelines Manual § 5D1.3(b).  The Guidelines of course also repeat the statute's requirement that conditions must involve "no greater deprivation of liberty than is reasonably necessary."  *Id*.  The court therefore must not only find the condition to be reasonably related to Congress's goals as related to the defendant but must weigh the consequences for the defendant's liberty against any likely achievement of the statutory purposes.  Though "reasonably necessary" may be quite vague in many legal contexts, see Dissent at 2, here it is tethered to *deprivation of liberty* in terms that in effect require the court to choose the least restrictive alternative.  Section 3583(d)(2) is thus, as the Seventh Circuit put it, a "narrow tailoring requirement." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003); see

also *United States v. Perazza-Mercado*, 553 F.3d 65, 73 (1st Cir. 2009); *United States v. Voelker*, 489 F.3d 139, 144-45 (3d Cir. 2007).

The court's characterization of the conditions imposed was quite inconsistent with the statutorily required consideration of Malenya's liberty. First, it justified them as "the standard conditions that are imposed in these cases," thus wrapping the case before it into a cluster of "these cases"—cases whose distinguishing features it did not delineate. Further, the court explained that the conditions were reasonably necessary to "minimize the risk" of re-offense, a formulation that ignores the balancing of goals against the defendant's liberty, as required by § 3583(d)(2). Nor was the implicit rejection of balancing in this language corrected or offset by any indication of balancing elsewhere in the court's discussion.

The limit on computer/internet access illustrates the failure to consider the consequences of the conditions. Its key phrase says that "you [Malenya] shall not possess or use a computer or have access to any on-line service without the prior approval of the United States Probation Office . . . and [shall] allow installation of a computer and Internet-monitoring program."

We have often noted the ubiquity of computers in modern society and their essentialness for myriad types of employment. See, e.g., *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). Given the need to use a computer to apply for a job at McDonald's, *id*., it seems likely that full-bore enforcement would shrink Malenya's employment opportunities to the vanishing point. And even if he secured probation office approval for use of the computer systems in his chosen vocation of medicine, the monitoring requirement appears inconsistent with medical privacy requirements.

Quite apart from employment, the internet provides, as we noted in another decision, "the easiest way to pay . . . bills, check the weather, stay on top of world events, and keep in touch with friends." *Love*, 593 F.3d at 12. A ban on computer and internet usage, qualified only by the possibility of probation office approval, is obviously a significant deprivation of liberty.

Implicitly the government suggests that this significant deprivation of liberty is no more than is "reasonably necessary" for the purposes referred to in § 3583(d)(2). The government contends that the deprivation is reasonably necessary because but for the internet, Malenya would not have met his victim. But this alone cannot be enough to justify such a deprivation of liberty. If it were, district courts could impose bans on reading newspapers if a defendant met his victim through the wanted ads, or ban the wearing of eyeglasses if a defendant first saw the victim through corrective lenses. Because the net is so novel, powerful and protean, it may seem to have a kind of magic. But pen, paper and literacy (or at least their widespread availability) once enjoyed all three characteristics, yet we would laugh at criminologists who advocated banning access for prisoners who had served their term.

When challenged as to its but-for causation argument, the government argued that Malenya's use of the internet to seek a sexual relationship with an adult demonstrated that he might use the internet to seek sex with children. But this rationale is similarly unavailing. We explained in *United States v. Burroughs*, 613 F.3d 233, 243 (D.C. Cir. 2010), that the mere possibility that "the Internet can be used to arrange sexual encounters with minors" is inadequate to justify an internet restriction. It is unclear if *any* computer or internet restriction could be justified in Malenya's case, but the condition in its current form is surely a greater deprivation of liberty than is

reasonably necessary to achieve the goals referenced in § 3583(d). Cf. *United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013).

The pornography restriction also illustrates the district court's failure to consider the appropriateness of the probation office's proposed conditions. The district court may have been within reason to restrict a child sex offender's access to child pornography, which is of course already illegal, see, e.g., 18 U.S.C. § 2252A. But the record contains no evidence either that Malenya indulged in adult or child pornography, or that viewing adult pornography would increase the likelihood that he would again indulge in sex with non-adults—which, after all, he did not seek out in this case. With no evidence of a need for the restriction, it appears to be a more significant deprivation of liberty than is reasonably necessary. See *Perazza-Mercado*, 553 F.3d at 75-76, 78 (vacating an adult pornography restriction as plain error when the district court gave no explanation for the condition and no discernible evidence in the record justified the ban).

Finally, the vague language and vast scope of the contact and residential conditions demonstrate the district court's failure to consider the effect of the imposed conditions on Malenya's liberty. The restrictions not only prevent Malenya from intentionally interacting directly with children, which could potentially be justified, but also prevent him from participating in many activities of everyday American life, activities that Malenya is not shown to have abused. For instance, a reasonable reading of the contact restriction would prevent Malenya from entering a shopping mall or going to a movie, even one that children cannot attend, for three years. Moreover, use of vague language like "close proximity" and "frequently congregate" gives the probation office the power to prevent Malenya from living almost anywhere and going to almost any place.

This significant deprivation of liberty might be justified in a case where an offender has frequented such locations for the purpose of preying on children, or has shown a pathological attraction to children. Here there is no evidence of such behavior. In fact, the evidence that Malenya is attracted to children per se is ambiguous and seems to place him in a category fitting neither the government's nor defendant's characterization. While he never (so far as appears) sought a sexual encounter with anyone underage, he did persist in his plans here even after learning that D.R. was only 14; neither his preferences nor his ethics called a halt.

We pause to consider the thought that the district court may have substituted stringency of conditions for time in prison. See Dissent at 5-6. Such a trade-off is obviously conceivable. But in addressing the *character* of conditions, § 3583(d)(2) introduces the goal of minimizing the deprivation of liberty and thus the narrow tailoring requirement considered earlier, making the execution of such a trade-off distinctly awkward. Further, in placing a defendant on supervised release, the court has necessarily determined that the goals of sentencing would at that point be better served by putting the defendant at liberty (albeit a constrained liberty), a shift that inherently seems to increase the weight due to rehabilitative goals over those of retribution, deterrence and incapacitation. Whatever the merits of the view that a court may trade off the *duration* of prison and supervised release, see *United States v. Albertson*, 645 F.3d 191, 198 (3d Cir. 2011), trading off duration of sentence for stringency of conditions may prove to be a difficult practical exercise. As the district court here gave no hint of making such a trade-off, we need not consider whether it would have complied with the statute.

Since the district court did not apply the correct standard for imposing conditions of supervised release, we vacate all

the challenged conditions and remand to the district court to impose special conditions of supervised release in compliance with § 3583(d).

*So ordered.*

KAVANAUGH, *Circuit Judge*, dissenting:  Malenya, then a 41-year-old man, attempted to have sex with someone he knew to be 14.  Malenya's attempt was thwarted only because the 14-year-old's mother fortuitously intercepted explicit text messages Malenya sent to the 14-year-old.  For his conduct, Malenya ultimately pled guilty and received a relatively short prison sentence of one year and a day in prison, followed by three years of supervised release with certain special conditions attached.  On appeal, Malenya objects to the special conditions imposed by the District Court and asks that they be vacated.  The majority opinion vacates the special conditions.  With one exception, I would affirm the special conditions.  I therefore respectfully dissent.

I

Under Section 3583 of Title 18, a district court at sentencing may impose a term of supervised release to follow a term of imprisonment.  By statute, a term of supervised release comes with certain conditions attached; some are mandatory and some are discretionary.  If the defendant violates a condition, the defendant's term of supervised release may be revoked and the defendant sent back to prison.

The mandatory conditions of supervised release include, for example, a requirement that the defendant not commit another crime or unlawfully possess a controlled substance during the term of supervised release.  *See* 18 U.S.C. § 3583(d).

By statute, the court also has discretion to impose additional supervised release conditions, which are commonly referred to as "special conditions," provided that three statutory requirements are met. First, special conditions must be "reasonably related" to some of the general sentencing factors identified in Section 3553(a), including "the nature and circumstances of the offense," "the history and

characteristics of the defendant," deterrence, protection of the public, and providing needed correctional treatment to the defendant. *Id.* § 3583(d)(1) (citing *id.* § 3553(a)(1)-(2)). Second, special conditions must entail "no greater deprivation of liberty than is reasonably necessary" for certain purposes set forth in Section 3553(a), including deterrence, protection of the public, and providing treatment to the defendant. *Id.* § 3583(d)(2) (citing *id.* § 3553(a)(2)). And third, special conditions must be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § 3583(d)(3). The first two requirements – the "reasonably related" and "reasonably necessary" requirements – are the focus of this appeal.

Section 3583's "reasonably related" and "reasonably necessary" standards are obviously quite vague. The vague statutory text means that district courts possess significant discretion to balance the competing sentencing considerations listed in Section 3553(a) (and cross-referenced by Section 3583) when imposing special conditions of supervised release. The significant discretion in turn means that we can expect variety. Different "district courts may have distinct sentencing philosophies." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). And even apart from such philosophical differences, the special conditions that appear "reasonably related" and "reasonably necessary" to one district court judge in a particular case may appear unduly restrictive to another district court judge.

On appeal, we review the district court's selection of special conditions of supervised release only for an abuse of discretion. *See United States v. Love*, 593 F.3d 1, 11 (D.C. Cir. 2010). Appellate deference is thus stacked upon wide district court discretion. As appellate judges, it is not our role to impose the mix of special conditions we would have

selected as district court judges in the first instance. Rather, our more modest task is simply to ensure that the district court has not jumped the rails bounding its wide discretion.

## II

In this case, in considering whether the District Court abused its discretion in finding the special conditions "reasonably related" to Section 3553(a)'s sentencing goals and not more restrictive than "reasonably necessary," I begin with four overarching considerations that inform my evaluation of the specific special conditions.[1]

---

[1] Malenya here challenges the District Court's imposition of special conditions of supervised release that require that he: (1) "not possess or use a computer or have access to any on-line service without the prior approval of the United States Probation Office"; (2) "not use a computer, Internet capable device, or similar electronic device to access pornography of any kind"; (3) "have no direct contact with minors under the age of 18 without the written approval of the probation officer"; (4) "refrain from entering into any area where children frequently congregate, including but not limited to schools, day care centers, theme parks, theatres, playgrounds, shopping malls, swimming areas, community recreation centers, and arcades"; (5) "not be employed in any capacity that may cause [him] to come into direct contact with children, except under circumstances approved in advance by the supervisory probation officer" and not "work or volunteer for any business or organization that provides services or employs persons under 18 years of age without the permission of the U.S. Probation Office"; (6) "participate in [a] program of sex offender assessment and treatment as directed by the probation officer"; (7) "submit to penile plethysmograph testing as directed by the United States Probation Office"; (8) not reside "in close proximity to locations frequented by children such as schools, playgrounds, public pools, and video galleries"; (9) not reside "where minor children also

*First*, any analysis of the special conditions must begin with the one critical fact in this case. Malenya, then a 41-year-old man, targeted and attempted to have sex with someone he knew to be 14 years old. This is a contact case. In other words, Malenya was doing far more than watching pornography. In what seems to be an overly generous interpretation, the majority opinion terms the evidence "ambiguous" as to whether Malenya was attracted to children per se. Maj. Op. at 12. But we know that Malenya (then 41 years old) actively sought to have sex with someone he knew to be 14 years old. That is not ambiguous. In light of Malenya's admitted effort to sexually prey on a 14-year-old, it was entirely rational for the District Court to impose various special conditions of supervised release in order to try to prevent Malenya from sexually exploiting future under-age victims.

*Second*, the special conditions imposed on Malenya are common for sex offenders, particularly for those such as Malenya who have engaged in or sought to engage in actual sexual activities with individuals they knew to be under age. *See generally* U.S. SENTENCING COMMISSION, FEDERAL OFFENDERS SENTENCED TO SUPERVISED RELEASE 20-27 (2010). That these kinds of special conditions are commonly imposed by district court judges helps demonstrate the reasonableness of the special conditions, in the same way that a sentence's being within the Sentencing Guidelines helps demonstrate the reasonableness of the sentence. *Cf. United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006)

reside . . . without the permission of the U.S. Probation Office"; and (10) "notify the U.S. Probation Office when [he] establish[es] a significant romantic relationship" and "inform the other party of [his] prior criminal history." Tr. Sentencing Hearing at 42-45, Aug. 20, 2012.

(appellate presumption of reasonableness for within-Guidelines sentence).

*Third*, in thinking about the overall reasonableness of the special conditions of supervised release in this case, we cannot lose sight of the sentence as a whole. As the cross-relationship between Sections 3583 and 3553 indicates, Congress considered imprisonment and supervised release, including attendant conditions, to be elements of a single sentencing package. Here, Malenya was sentenced to only one year and a day in prison, a fairly short prison term for a 41-year-old who attempted to have sex with someone he knew to be 14 years old. After all, the statutory maximum sentence Malenya could have received under the D.C. Code provision to which he pled guilty was three years' imprisonment. *See* D.C. CODE §§ 22-3010.02(b), 24-403.01. And the federal offense for which Malenya was originally indicted, attempted enticement of a minor in violation of 18 U.S.C. § 2422(b), carried a federal *mandatory minimum* of 10 years' imprisonment. But for the Government's exercise of prosecutorial discretion, Malenya would have been subject to that 10-year mandatory minimum sentence for his conduct.

The relative brevity of Malenya's term of imprisonment certainly bears on any assessment of the severity of the special conditions. After all, living in freedom subject to a few special conditions is – at least up to a point, depending on the nature of the special conditions – a far lesser restraint on a defendant's liberty than living in prison. Moreover, when as here a district court selects a shorter term of imprisonment, it may correspondingly want to impose more restrictive special conditions of supervised release – or a lengthier term of supervised release – in order to achieve Section 3553(a)'s goals of deterrence and protection of the public. *See* 18 U.S.C. § 3553(a)(2)(B)-(C); *United States v. Albertson*, 645

F.3d 191, 198 (3d Cir. 2011) (because of the "interplay between prison time and the term of supervised release," "a district court may find it proper to impose a longer term of supervised release to follow a relatively shorter term of imprisonment").

*Fourth*, the special conditions in Malenya's case apply for only three years. Contrast that limited term with the lengthy terms of supervised release in some of our recent cases involving sex offenders. *See, e.g.*, *United States v. Accardi*, 669 F.3d 340, 343-46 (D.C. Cir. 2012) (40 years); *United States v. Love*, 593 F.3d 1, 5 (D.C. Cir. 2010) (life term). The relatively short duration of Malenya's term of supervised release diminishes the overall impact of the special conditions on Malenya's liberty, and further shows that the District Court was careful to impose special conditions that were not more restrictive than "reasonably necessary."

## III

With those four overarching considerations in mind, I turn now to specific analysis of the disputed special conditions. Applying our deferential standard of review, I would uphold all but one of the special conditions.

One group of disputed special conditions limits Malenya's ability to undertake certain activities: owning or using a computer, accessing the Internet, contacting minors directly, and working, volunteering, or residing with minors. Importantly, however, Malenya is not *banned* from those activities. Rather, Malenya must simply obtain the approval of the United States Probation Office before engaging in any of those activities.

Malenya's probation officer will presumably exercise his or her discretion in an appropriate manner befitting Malenya's

circumstances. As this Court has emphasized in a prior case, we can "assume the Probation Office will reasonably exercise its discretion" to lift a prohibition when that prohibition "no longer serves the purposes of [the defendant's] supervised release." *United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010). If the probation officer acts arbitrarily, such as in policing Malenya's use of a computer, Malenya may petition the district court to modify the special conditions and cabin the officer's discretion. *See* 18 U.S.C. § 3583(e)(2); *United States v. Legg*, 713 F.3d 1129, 1134 (D.C. Cir. 2013); *United States v. Padilla*, 415 F.3d 211, 223 (1st Cir. 2005) (en banc). With that point in mind, I do not believe that the District Court abused its discretion in imposing those special conditions.

Relatedly, Malenya contends that some of the terms in the special conditions are impermissibly vague, including the terms "close proximity" and "significant romantic relationship." But again, Malenya may consult with his probation officer or, as appropriate, the district court regarding the proper construction of those terms should Malenya disagree with how they are applied in practice by the probation officer. *See United States v. Forde*, 664 F.3d 1219, 1224-25 (8th Cir. 2012).

Another special condition forbids Malenya from using a computer to view pornography. But that prohibition is hardly onerous, and it is justified for an admitted sex offender by the apparent "connection" that courts have recognized "between pornography and sex crimes." *United States v. Laureys*, 653 F.3d 27, 35 (D.C. Cir. 2011) (citing *United States v. Sebastian*, 612 F.3d 47, 52 (1st Cir. 2010); *Amatel v. Reno*, 156 F.3d 192, 199-201 (D.C. Cir. 1998)).

8

An additional special condition requires Malenya to enroll in a sex offender treatment program. But that requirement is manifestly appropriate for a contact sex offender such as Malenya. Sex offender treatment programs can reduce the risk of recidivism and allow clinical therapists to supervise sex offenders during their reintegration into society. *Cf. McKune v. Lile*, 536 U.S. 24, 33 (2002) (plurality opinion) ("Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism.").

Another special condition prohibits Malenya from "entering into any area where children frequently congregate." Tr. Sentencing Hearing at 43, Aug. 20, 2012. But that special condition certainly makes sense for a defendant such as Malenya who has already tried to have sex with someone he knew to be 14 years old. Malenya expresses concern that this special condition would forbid many day-to-day activities. But even if the condition were considered problematic in the abstract, sensibly interpreted it applies only to entering areas such as schools and children's playgrounds where children are commonly present in large numbers. It cannot reasonably and should not be read to proscribe casual or chance encounters or entering areas such as theaters or shopping malls unless those venues are, for example, a children's theater or a mall catering specifically to children. *See United States v. Burroughs*, 613 F.3d 233, 246 (D.C. Cir. 2010); *see also Arciniega v. Freeman*, 404 U.S. 4, 4 (1971). Again, Malenya may consult with his probation officer if he has questions.

To reiterate, moreover, my analysis of all of the special conditions is buttressed by the surrounding circumstances here: Malenya tried to have sex with a 14-year-old, the

special conditions here are common (and thus have been deemed reasonable by many district court judges) for sex offenders, Malenya received a relatively short prison sentence, and the length of the term of supervised release is also relatively short. Therefore, I would uphold all of the special conditions of supervised release, with one exception. I would vacate the special condition that authorizes penile plethysmograph testing. That procedure implicates significant liberty interests and would require, at a minimum, a more substantial justification than other typical conditions of supervised release. *See United States v. McLaurin*, 731 F.3d 258 (2d Cir. 2013). Such a justification is not present on this record. In light of the record in this case and the significant liberty interests infringed by this invasive procedure, I would vacate that one special condition.

IV

In vacating the special conditions, the majority opinion, among other things, says that the District Court did not sufficiently explain its reasoning for the special conditions. But in imposing the sentence, including the special conditions of supervised release, the District Court carefully and painstakingly explained the Section 3553(a) sentencing factors and how the competing considerations played out in this case. Contrary to the suggestion in the majority opinion, moreover, the District Court did not ignore mitigating factors. The District Court stressed Malenya's remorse, military service, and lack of criminal history, and emphasized that this was a "difficult case." *See* Tr. Sentencing Hearing at 37-41, Aug. 20, 2012. A review of the sentencing transcript shows that the District Court grappled with and plainly understood the relevant sentencing factors. As our precedents have repeatedly said, although the district court must *consider* the Section 3553(a) factors, it need not expressly address all of

them at the sentencing hearing. *See, e.g.*, *United States v. Brinson-Scott*, 714 F.3d 616, 626 (D.C. Cir. 2013) ("[T]he district court's explanation did not invoke any of the section 3553(a) factors by name. But we do not require that it do so. Sentencing, after all, is not a game of Simon Says."); *United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005). As I read the record, the District Court did its job here and committed no procedural error.

\* \* \*

A 41-year-old man sought to have sex with someone he knew to be 14 years old. That is a serious crime. With the one exception described above, I would uphold the special conditions imposed by the District Court. I respectfully dissent.